[Nos. 46319, 46560.   En Banc.   October 2, 1980.]

KENNETH F. KENNEDY, ET AL, *Appellants,* v. THE CITY OF SEATTLE, ET AL, *Respondents.*

*Abbey & Fox, Martin D. Fox,* and *Mark Jaffe,* for appellants.

*Douglas N. Jewett, City Attorney,* and *James E. Fearn, Jr., Assistant,* for respondent City of Seattle.

*Perkins, Coie, Stone, Olsen & Williams,* by *Lawrence B. Ransom* and *Peter D. Sloane,* for respondent McGuire.

DOLLIVER, J.—Plaintiffs own two houseboat moorage sites in Seattle. On one they have their own houseboat and on the other is a houseboat owned by defendant Linda McGuire. Plaintiffs wish to evict McGuire from the moorage but have been unable to do so because of Seattle ordinance No. 107012, effective December 21, 1977. A complex set of legal proceedings which preceded our consideration of this case need not be catalogued. It is sufficient to state that plaintiffs brought an action seeking a declaratory judgment that the ordinance is unconstitutional, that summary judgment was granted to the defendants, that we granted plaintiffs' appeal, and that all issues concerning this matter are now before us. The sole question we consider is whether Seattle ordinance No. 107012 or any part of it is unconstitutional.

At the outset, plaintiffs contend defendants are collaterally estopped from denying that the ordinance is unconstitutional. The City of Seattle prosecuted Mr. Kennedy in Seattle Municipal Court for a criminal misdemeanor violation of the ordinance. That prosecution was dismissed because the municipal court judge ruled that the ordinance was unconstitutional.

■ There are a number of requirements for the application of the doctrine of collateral estoppel. *See Beagles v. Seattle–First Nat'l Bank,* 25 Wn. App. 925, 610 P.2d 962 (1980). We need consider only one: that application of the doctrine must not work an injustice. *Henderson v. Bardahl Int'l Corp.,* 72 Wn.2d 109, 119, 431 P.2d 961 (1967). It would be manifestly unjust not only to litigants Kennedy and McGuire but to other houseboat and moorage owners for the constitutionality of the houseboat ordinance to be determined by a municipal court ruling unappealed by the

City. Furthermore, the relitigation of an important public question of law such as the validity of the houseboat ordinance should not be foreclosed by collateral estoppel. *Los Angeles v. San Fernando,* 14 Cal. 3d 199, 230, 537 P.2d 1250, 123 Cal. Rptr. 1 (1975).

The preamble to ordinance No. 107012 states:

> AN ORDINANCE relating to floating home moorage; establishing a fact–finding process to aid the settlement of disputes over moorage fees between floating home owners and owners of floating home moorages; regulating eviction of floating homes from their moorages and declaring the emergency and necessity for this ordinance to become effective without delay.
>
> WHEREAS, federal, state and local legislation concerning shorelands has had the effect of limiting the number of available floating home moorage sites and has resulted in a situation in which every available floating home moorage is occupied, and there is little prospect that new floating home moorages will be developed; and
>
> WHEREAS, the ownership of a floating home requires a substantial investment, and a floating home is not readily mobile; and the required removal of a floating home from its moorage when no other moorage is readily available will destroy the value of such property except for its value as scrap; and
>
> WHEREAS, floating homes are a unique part of the environment and life of The City of Seattle, and in order to encourage the preservation of floating homes it is necessary and desirable to provide for a process whereby a floating home owner can obtain the determination of an independent fact–finder as to the reasonableness of any increase of floating home moorage fees, and it is necessary and desirable to regulate evictions of floating homes from their moorages; . . .

The pertinent provisions of the ordinance are as follows:

Section 2 makes it unlawful for a moorage owner to give notice to a houseboat owner to remove his houseboat, or to evict a houseboat except for six specific reasons. They are: (1) *failure to pay rent*; (2) *breach of covenant* (excluding the obligation to surrender the site); (3) *failure to abate a nuisance or causing a substantial damage* to the moorage

*or substantially interfering with the comfort, safety or enjoyment of other floating home properties* at the moorage; (4) *failure to execute a lease* not in excess of 5 years at a reasonable rent; (5) *a change in use of the moorage* (with several further restrictions) *with 6 months' advance notice*; and (6) *if the moorage owner,* with 6 months' notice, *wishes to occupy the moorage site and finds the displaced houseboat owner another lawful moorage site within the City of Seattle.*

Section 3 makes it unlawful to harass, punish or retaliate against a houseboat owner, for exercising his legal rights, by demanding the home's removal or by interfering with its quiet enjoyment.

Sections 4, 5, 6 and 7 allow a homeowner faced with a moorage fee increase to petition for public fact–finding by an arbitrator to determine whether the proposed increase is reasonable.

Section 8 makes it unlawful for a moorage owner to raise rent or demand removal for failure to pay the increased rent if the moorage owner fails to provide requested information to the fact finder.

Section 9 makes it unlawful to fail to pay the fact finder's fee.

Section 13 makes violation of sections 2, 3, 8 and 9 crimes and subject to a civil fine or forfeiture of up to $500.

Section 10 makes it unlawful for a houseboat owner to sell, lease or rent a floating home without advising the new buyer, lessee or renter of the effect of the ordinance or to change occupancy without 15 days' notice to the moorage owner. Unlike those sections dealing principally with the moorage owner's obligations, violations of this section are not made subject to criminal or civil penalties by virtue of section 13.

The ordinance has two fundamental consequences: (1) It restricts greatly the ability of a moorage owner to evict the owner of a floating home from that moorage (section 2), and (2) it allows a houseboat owner to have the approval of

a fact finder before any increase in rent can be made by the moorage owner (sections 4 through 9).

We will consider the rent control provisions first. The crucial issue is whether these provisions exceed the police power granted to the City under Const. art. 11, § 11:

> Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.

■■ The rent control provisions are essentially rate–fixing regulations. Our opinion in *Petstel, Inc. v. County of King,* 77 Wn.2d 144, 459 P.2d 937 (1969), is controlling. There we upheld a King County resolution fixing the maximum rates to be charged by employment agencies.

While any ordinance passed is presumed constitutional, nonetheless, an exercise of the police power is subject to judicial review and must pass the test of reasonableness. *Petstel, Inc. v. County of King, supra.* Four tests are laid down in *Petstel* to determine if a rate regulation meets the judicial test of reasonableness.

> These four tests represent the limits of judicial review of legislative enactments under the police power. The courts will not examine the motives of the legislative body; they will not require factual justification for the legislation if it can reasonably be presumed; and the courts will not weigh the wisdom of the particular legislation enacted.

*Petstel,* at 155. The four tests are:

First, any legislation under the police power must be reasonably necessary in the interest of the public health, safety, morals and the general welfare. We believe the declaration in the preamble of ordinance No. 107012, quoted above, is sufficient to meet the test. From the record, it appears there are presently 444 floating home sites in Seattle, all are occupied, there is no vacancy likely in the future, nor are any more sites likely to come into existence. While it may well be that the interests of the 444 houseboat owners are being particularly protected, we cannot say that

this protection does not also enure to the benefit of the citizens of Seattle. Furthermore, it is not inappropriate for the City to protect what is characterized as "a unique part of the environment and life of The City." The first test is met.

The second test requires that even though the activity in question is subject to police regulation, the legislation must be substantially related to the evil sought to be cured. This test is also met. When there is an absolutely limited number of moorages, there is a reasonable connection between controlling exorbitant rent increases and the regulatory scheme adopted by the City.

The third test requires that the classes of business, products or persons regulated, or the various classes established within the legislation, be reasonably related to the legitimate object of the legislation. As we noted in *Petstel*, this basically is an equal protection test. Contrary to the assertions of plaintiffs, houseboat moorage lessors are sufficiently different from other landlords to warrant regulation of them as a separate class. Furthermore, the situation of an absolute limitation on the number of houseboat sites is clearly different from residential rental units on land. There need be only a rational basis for supporting the two classes. *Yakima County Deputy Sheriff's Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 601 P.2d 936 (1979); *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n,* 83 Wn.2d 523, 520 P.2d 162 (1974). There is such a rational basis here, and plaintiffs have not shown that the separate classification of moorage lessors is manifestly arbitrary, unreasonable, inequitable or unjust. *Clark v. Dwyer,* 56 Wn.2d 425, 353 P.2d 941 (1960). There is no violation of equal protection.

Finally, the rates set must be reasonable and not unnecessarily prohibitory and confiscatory. Sections 4 through 9 give detailed requirements for the fact–finding procedure indicating a number of factors and specific guidelines which must be considered by the fact finder as that person hears the case and renders a decision. We believe these procedures are within the test. Plaintiffs do not claim, nor is

there any evidence, that the rental rates set under the pro-visions of the ordinance are unreasonable or unnecessarily prohibitive; indeed, plaintiffs successfully obtained a rent increase when defendant McGuire invoked the procedure. The real complaint of plaintiffs seems to be that, because of the burden of the alleged costs to a moorage owner in obtaining a rent increase, the statute is confiscatory. But as we observed in *Petstel,* "reasonable costs imposed upon businesses by otherwise valid exercises of the police power do not amount to a taking of property without compensation." *Petstel,* at 157. Furthermore, plaintiffs do not allege the rates set or the expenses would prohibit them from continuing as moorage lessors. *Petstel, Inc. v. County of King, supra.*

■■ With respect to the fact–finding procedures for moorage rental increases, section 6 is claimed to be unconstitutionally vague by plaintiffs. We need not consider this issue on appeal since it was not raised before the trial court, it does not relate to jurisdiction, nor does the fact–finding process involve criminal sanctions. *Robinson v. Peterson,* 87 Wn.2d 665, 555 P.2d 1348 (1976). Plaintiffs also assert a claim of vagueness as to sections 2 and 3, the violation of which may result in criminal sanctions under section 13. The requirements of a statute or ordinance to avoid the defect of vagueness were most recently set forth in *Seattle v. Rice,* 93 Wn.2d 728, 612 P.2d 792 (1980). The statute must give a citizen "fair notice of what conduct is proscribed" and the "statute or ordinance must be sufficiently specific" to ensure it will not be enforced arbitrarily. *Seattle v. Rice, supra* at 731. Sections 2 and 3 amply meet both tests.

We hold the fact–finding provisions of the ordinance, sections 4 through 9, to be constitutional.

■ Next we consider the provisions of the ordinance on evictions. At the outset, we find that state law does not preempt the ordinance. Preemption occurs when the legislature either expressly or by necessary implication states its intention to preempt the field (*Seattle v. Long,* 61 Wn.2d

737, 380 P.2d 472 (1963)), or when a state statute and local ordinance are in such direct conflict they cannot be reconciled. *Bellingham v. Schampera,* 57 Wn.2d 106, 356 P.2d 292, 92 A.L.R.2d 192 (1960); *State v. Seattle,* 94 Wn.2d 162, 615 P.2d 461 (1980). Plaintiffs claim RCW 59.12, dealing with forcible entry and forcible and unlawful detainer, preempts the field. *See also* RCW 59.18, the Residential Landlord-Tenant Act of 1973. There is no preemption expressly or by implication, nor is there an irreconcilable conflict between the statutes and the ordinance. A defendant in an unlawful detainer action may assert any defenses available. RCW 59.16.030; 59.18.380. The ordinance does not raise further procedural barriers between landlord and tenant but simply represents another defense for the tenant. *See Birkenfeld v. Berkeley,* 17 Cal. 3d 129, 550 P.2d 1001, 130 Cal. Rptr. 465 (1976). *See also* Laws of 1979, 1st Ex. Sess., ch. 186, p. 1696, at pages 1705–11 where the Governor vetoed portions of the act which would have specifically preempted Seattle ordinance No. 107012.

██ We hold, however, that section 2 is unconstitutional. The fourfold test of *Petstel* is also applicable here and the same analysis as was applied in the first three tests as to rent control are applicable to evictions. But we believe the requirements of sections 2(5) and 2(6) as to evictions are unconstitutionally prohibitory and confiscatory.

In *Maple Leaf Investors, Inc. v. Department of Ecology,* 88 Wn.2d 726, 565 P.2d 1162 (1977), in discussing whether a regulation of an owner's use of land was a valid exercise of the police power or a taking or damaging of private property for public use in violation of Const. art. 1, § 16, and the fifth amendment to the United States Constitution, we said:

> The question essentially is one of social policy which requires the balancing of the public interest in regulating the use of private property against the interests of private landowners not to be encumbered by restrictions on the use of their property.

*Maple Leaf,* at 731. *See, e.g., Department of Natural Resources v. Thurston County,* 92 Wn.2d 656, 601 P.2d 494 (1979); *Peterson v. Department of Ecology,* 92 Wn.2d 306, 596 P.2d 285 (1979).

Here, as in *Maple Leaf,* there is unquestionably a valid public purpose. But the limitations on the use by the moorage owner are so restrictive as to amount to a taking under Const. art. 1, § 16, and the Fifth Amendment. *Palm Beach Mobile Homes, Inc. v. Strong,* 300 So. 2d 881, 888 (Fla. 1974), cited by defendants as being comparable to the houseboat ordinance, is different in one decisive particular: mobile home park regulations could allow the landlord to evict. As the Florida court said:

> Recognizing the perpetual occupancy rights on another's property cannot, consistent with the constitution, be granted by law, . . . [w]e, therefore, find that is [*sic*] is not inconceivable that one rule adopted by a mobile home park owner be that the landlord can terminate the tenancy after substantial duration and a park rule to that effect would be consistent with the remedies sought to be accomplished by the legislature *provided* that the notice time was for a reasonable period, and we cannot say that a rule requiring vacancy on at least twelve months' or more notice would be unreasonable.

In *Birkenfeld v. Berkeley, supra* at 178, which has eviction restrictions similar to the houseboat ordinance, there is an exception when "the landlord seeks to recover possession in good faith for use and occupancy of herself or himself, of her or his children, parents, brother, sister, father-in-law, mother-in-law, son-in-law, or daughter-in-law". *See also Sabato v. Sabato,* 135 N.J. Super. 158, 342 A.2d 886 (1975). No such exemption is in the houseboat ordinance.

Section 2(6) of ordinance No. 107012 is explicit. There can be no eviction unless,

> The floating home owner is directed by the moorage owner to remove his or her home from its moorage site by a written notice given at least six months prior to the demanded date of removal where the purpose of such

demand for removal is to permit the moorage owner to personally occupy such moorage site with a floating home to be used as such owner's residence, provided that such demand for removal is not contrary to any existing lease agreement between the moorage owner and such floating home owner *and that such moorage owner locates for the displaced floating home owner another lawful moorage site within The City of Seattle.*

(Italics ours.)

As plaintiffs point out, this is an impossibility. There are no other sites available. The fact that plaintiffs own more than one site, while fortuitous, does not get around the basic defect of the ordinance: If a houseboat owner is on a moorage and does not violate other portions of the houseboat ordinance, it is impossible for the houseboat owner to be evicted and impossible for the owner of the moorage to use the moorage for the owner's residence. While reasonable restrictions on the use of property by an owner are proper (*Maple Leaf Investors, Inc. v. Department of Ecology, supra*), to require a landlord to locate a nonexistent moorage for a houseboat owner before the residence of the landlord can be moved to the property, is not reasonable.

Even then it might be argued that, although the moorage cannot be used for the residence of the landlord, section 2(5) is sufficient to escape the bar of Const. art. 1, § 16 since it allows for evictions "to change the use" of the property. But this is an illusory exemption. As defendants state, the only permitted uses in an "RW" zone (which includes the property here under dispute), are (1) floating home moorages and (2) nonprofit yacht clubs. Seattle Charter & General Ordinances, ch. 26.18 (June 24, 1958). The latter use is so highly restrictive as to tilt the balance so that in fact it is a taking. Furthermore, the establishment of any kind of a yacht club on a small restricted moorage with difficult access is no more a reasonable possibility than finding a nonexistent moorage.

Sections 2(5) and (6) deprive the moorage owner of any personal use of the moorage and in effect give a houseboat

owner a perpetual right to use the moorage. We hold section 2 of Seattle ordinance No. 107012 to be unconstitutional. We find the other contentions raised by the plaintiffs either without merit or, because of our opinion, unnecessary to consider.

Reversed.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, HICKS, and WILLIAMS, JJ., concur.