[No. 38546-1-I. Division One. August 31, 1998.]

*In the Matter of the Personal Restraint of* TOMMY H. METCALF, *Petitioner.*

168

*James R. Dixon* and *Kathryn A. Russell* of *Nielsen, Broman & Associates, P.L.L.C.*, for petitioner.

*Christine O. Gregoire, Attorney General,* and *John S. Blonien, Mary E. Fairhurst, Douglas W. Carr,* and *Colleen B. Evans, Assistants,* for respondent.

ELLINGTON, J. — When inmates in Washington state prisons receive money, certain statutes require the Department of Corrections to make deductions for costs of incarceration, the crime victim's compensation fund, and a savings account. These provisions were not in place when Tommy H. Metcalf was imprisoned in 1990, and he filed this personal restraint petition challenging the provisions on numerous federal and state constitutional grounds, seeking to withdraw his guilty plea. Metcalf's federal challenges were previously rejected in a federal class action. We elect to reach the merits of the federal claims, but we likewise reject the challenges, finding the statutes remedial and thus constitutional. We also reject Metcalf's state constitutional claims, and deny the petition.

## Facts

After Metcalf was incarcerated in 1990 for two counts of first degree murder, the Legislature enacted two statutes that mandate deductions from moneys received by prisoners. One statute requires deductions from a prisoner's wages (RCW 72.09.111, effective June 30, 1994);[1] the other

---

[1]The wage deduction statute provides:

(1) The secretary shall deduct from the gross wages or gratuities of each inmate working in correctional industries work programs, taxes and legal financial obligations. The secretary shall develop a formula for the distribution of offender wages and gratuities.

requires deductions from all other funds received (RCW 72.09.480, effective June 15, 1995).[2]

For the wage deduction statute, the total amount of the deductions varies from 5 to 35 percent, depending on the class of work program in which the inmate participates. For example, for an inmate who participates in a class I work program, 35 percent of his or her wages are deducted, with 5 percent allocated to victim compensation, 10 percent allocated to the inmate's savings account, and 20 percent allocated to incarceration costs. RCW 72.09-.111(1)(a). The received funds deduction statute requires a flat 35 percent deduction, with the funds allocated as for

---

(a) The formula shall include the following minimum deductions from class I gross wages and from all others earning at least minimum wage:

(i) Five percent to the public safety and education account for the purpose of crime victims' compensation;

(ii) Ten percent to a department personal inmate savings account; and

(iii) Twenty percent to the department to contribute to the cost of incarceration.

(b) The formula shall include the following minimum deductions from class II gross gratuities:

(i) Five percent to the public safety and education account for the purpose of crime victims' compensation;

(ii) Ten percent to a department personal inmate savings account; and

(iii) Fifteen percent to the department to contribute to the cost of incarceration.

(c) The formula shall include the following minimum deduction from class IV gross gratuities: Five percent to the department to contribute to the cost of incarceration.

(d) The formula shall include the following minimum deductions from class III gratuities: Five percent for the purpose of crime victims' compensation.

RCW 72.09.111.

[2]The received funds deduction statute recites:

When an inmate receives any funds in addition to his or her wages or gratuities, the additional funds shall be subject to the deductions in RCW 72.09.111(1)(a) and the priorities established in chapter 72.11 RCW.

RCW 72.09.480(2).

class I work program wage deductions. RCW 72.09.480.

On December 26, 1995, Metcalf filed a writ of mandamus and a personal restraint petition in the Supreme Court, alleging that the fund and wage deduction statutes violate several state and federal constitutional guaranties. The Supreme Court dismissed the writ and transferred the petition to this court. Extensive briefing followed. Metcalf's federal constitutional claims included ex post facto, double jeopardy, due process, bill of attainder, and excessive fines violations.

Sometime in 1995, another prisoner filed an action in federal court challenging the received funds statute. The claims asserted included all the federal constitutional claims Metcalf makes here.[3] On July 30, 1996, the federal suit was certified as a class action for "persons who are inmates as that term is defined by RCW 72.09.015 or persons who are no longer inmates but who have had money deducted pursuant to [the received funds statute]." This class included Metcalf. On April 9, 1997, the district court dismissed numerous federal constitutional claims, including those related to ex post facto, double jeopardy, due process, bill of attainder, and excessive fines violations.

## Discussion
### Reviewability of Petition

A threshold issue is whether Metcalf's claims are reviewable in a personal restraint petition (PRP). This requires a showing of restraint and an unlawful aspect of the restraint. RAP 16.4.

■ The crux of Metcalf's claims is that the statutes are unconstitutional because they are punitive. If the statutes

---

[3] *Wright v. Riveland*, No. C95-5381FDB, Order at 1-2 (W.D. Wash. Apr. 9, 1997). The date this action was filed is not in the record. The docket number indicates that the action was filed in 1995. The first amended complaint relating to the class action was filed October 25, 1996. The claims in *Wright* included ex post facto, bill of attainder, excessive fines, substantive and procedural due process, takings clause, and double jeopardy violations.

are punitive, Metcalf argues they unlawfully restrain him within the meaning of the rules concerning PRPs. *See* RAP 16.4(c)(2), (6), (7).[4] We thus cannot resolve the reviewability issue without addressing the merits of Metcalf's claims. *See State v. S.M.H.*, 76 Wn. App. 550, 553, 887 P.2d 903 (1995).

■ A PRP is an appropriate vehicle by which to allege that a recently-enacted statute impinges on a detainee's constitutional rights. *See In re Personal Restraint of Runyan*, 121 Wn.2d 432, 444-45, 853 P.2d 424 (1993).[5] The State's fear that reviewing this petition will render "all legislative decisions with respect to prisons . . . subject to review in a personal restraint petition" is misplaced; the rule itself sufficiently circumscribes the availability of the petition for review of later enactments.

### Res Judicata and Collateral Estoppel

■ ■ Res judicata and collateral estoppel prevent the relitigation of claims or issues between identical parties

---

[4]In relevant part, the rule describing grounds for remedy under a personal restraint petition provides:

 (c) **Unlawful Nature of Restraint.** The restraint must be unlawful for one or more of the following reasons:

 . . . .

 (2) The conviction was obtained or the sentence or other order entered in a criminal proceeding or civil proceeding instituted by the state or local government was imposed or entered in violation of the Constitution of the United States or the Constitution or laws of the State of Washington; or

 . . . .

 (6) The conditions or manner of the restraint of petitioner are in violation of the Constitution of the United States or the Constitution or laws of the State of Washington; or

 (7) Other grounds exist to challenge the legality of the restraint of petitioner.

RAP 16.4(c)(2), (6), (7).

[5]Contrary to the State's suggestion, a declaratory judgment action in superior court is not an adequate remedy because Metcalf's right to counsel in such an action is not statutorily guaranteed. *Compare* RCW 10.73.150(4) ("Counsel shall be provided at state expense to an adult offender convicted of a crime . . . when the offender is indigent . . . and . . . [i]s not under sentence of death and requests counsel to prosecute a collateral attack after the chief judge has determined that the issues raised by the petition are not frivolous . . . .").

and their privies. The party asserting these defenses bears the burden of proof. *Bradley v. State*, 73 Wn.2d 914, 916, 442 P.2d 1009 (1968). Here, that party is the State, which asserts that dismissal of the federal class action estops Metcalf.

To prove res judicata, the State must show concurrence of identity between two actions in four respects: (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made. *U.S. Bank v. Hursey*, 116 Wn.2d 522, 529, 806 P.2d 245 (1991). Res judicata should not be applied when it would work an injustice. *Henderson v. Bardahl Int'l Corp.*, 72 Wn.2d 109, 119, 431 P.2d 961 (1967).

Collateral estoppel is similar to res judicata, applying to issues instead of claims. Collateral estoppel has four requirements: (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and (4) application of the doctrine must not work an injustice. *State v. Williams*, 132 Wn.2d 248, 254, 937 P.2d 1052 (1997). Because Metcalf raises a number of state constitutional claims not advanced in the federal class action, we analyze only whether collateral estoppel operates as a bar to his federal claims.

The federal action was a challenge to the received funds statute, and advanced ex post facto, double jeopardy, due process, bill of attainder, and excessive fine claims identical to those asserted by Metcalf. While the federal action did not directly address the wage deduction statute, the received funds statute explicitly incorporates the proportioning methodology of the wage deduction statute. *See* RCW 72.09.480 (adopting deduction arm of RCW 72.09.111(1)(a)). The analysis of constitutional issues raised by both statutes is therefore the same, except that any issues raised solely under the wage statute would be less

compelling; inmates have no constitutional property interest in receiving prison wages, *see Hrbek v. Farrier,* 787 F.2d 414, 416 (8th Cir. 1986), whereas they do in receiving money from outside sources, *see Quick v. Jones,* 754 F.2d 1521, 1523 (9th Cir. 1985). Metcalf concedes that the analogous state constitutional provisions upon which he relies receive an interpretation identical to the analogous federal ones. Several of Metcalf's constitutional issues are thus identical to issues resolved in *Wright.*

■ ■ The adjudication in *Wright* ended in a final judgment on the merits,[6] and as a member of the certified class, Metcalf was a party to the prior litigation. Collateral estoppel thus bars Metcalf's federal (and analogous state) constitutional claims unless application of the doctrine would work an injustice.

In this regard, Metcalf advances several arguments: that the federal court did not give full consideration to the inmates' claims and did not consider Washington case law in interpreting Washington statutes, and that collateral estoppel does not apply where the case involves relitigation of an important issue of law.

We reject Metcalf's claim that the federal magistrate and the district judge did not give full consideration to the inmates' claims. Metcalf relies on *State v. Frederick,* 100 Wn.2d 550, 559, 674 P.2d 136 (1983), wherein our Supreme Court declined to apply collateral estoppel where the prior adjudication failed to fully consider the evidence and apply the appropriate law. In that case, the asserted "prior adjudication" was a single-sentence order refusing to consider a petitioner's personal restraint petition, conclud-

---

[6]In the federal courts, a rule 12(b)(6) dismissal is considered a determination of the merits and is entitled to full res judicata effect. *See, e.g., Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 399 n.3, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981). Washington law likewise treats dismissals as final judgments. *See Department of Ecology v. Yakima Reservation Irrigation Dist.,* 121 Wn.2d 257, 290, 850 P.2d 1306 (1993). The possibility of appeal does not affect finality for res judicata or collateral estoppel purposes. *See Riblet v. Ideal Cement Co.,* 57 Wn.2d 619, 621, 358 P.2d 975 (1961); *see generally* 1B JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.416[3] at 521-22 (2d ed. 1991); Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington,* 60 WASH. L. REV. 805, 824 (1985).

ing that it had "no basis either in fact or law and appear[ed] frivolous on its face." The Supreme Court proceeded to consider the merits. *Id.* at 559.

This case differs greatly from *Frederick*, because here the federal court did not issue a perfunctory order. To the contrary, the claims were carefully considered and discussed. We recognize, however, that the district judge's analysis relied upon case law which is different from Washington's. *See infra* (comparing Washington doctrine concerning restitution with New Jersey case on which the district court relied).

■ In addition, Metcalf is correct that Washington follows the rule that "an important issue of law should not be foreclosed by collateral estoppel." *Southcenter Joint Venture v. National Democratic Policy Comm.*, 113 Wn.2d 413, 418-19, 780 P.2d 1282 (1989) (citing *Kennedy v. City of Seattle*, 94 Wn.2d 376, 379, 617 P.2d 713 (1980)). There can be little question as to the importance of the issues raised here, given the large numbers of inmates affected and the gravity of the challenges asserted. We therefore elect to consider the merits of Metcalf's claims.

## Merits of Constitutional Challenges
### DUE PROCESS

■ We first address Metcalf's claim that imposition of the deductions violated his state and federal rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 3 of the Washington Constitution. Metcalf's procedural due process rights were not violated. When a challenge is to a legislative enactment, the legislative process provides all the process due. *See Oklahoma Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n*, 889 F.2d 929, 936 (10th Cir. 1989).

■ Likewise, Metcalf's substantive due process rights were not violated. Metcalf makes no argument that his interest in the moneys at issue involves a fundamental

right, and his claim is therefore subject to only rational basis review. *See Washington v. Glucksberg*, 521 U.S. 702, 117 S. Ct. 2258, 2267-68, 2271, 138 L. Ed. 2d 772 (1997). The deductions at issue here are rationally related to the legitimate government interests of curtailing the costs of incarceration and compensating victims of crime, and Metcalf does not argue to the contrary.

Ex Post Facto, Double Jeopardy, and Bill of Attainder Claims

 Metcalf asserts the statutes violate the ex post facto clauses of United States Constitution article I, section 9 and Washington Constitution article I, section 23, the double jeopardy clauses of the Fifth Amendment to the United States Constitution and Washington Constitution article I, section 9, constitute bills of attainder in violation of United States Constitution article I, section 10 and Washington Constitution article I, section 23, and are excessive fines under the Eighth Amendment. These claims all depend on a finding that the deductions are punishment, e.g., ex post facto, *Collins v. Youngblood*, 497 U.S. 37, 42-43, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990) and *State v. Ward*, 123 Wn.2d 488, 497-98, 869 P.2d 1062 (1994); double jeopardy, *Hudson v. United States*, 522 U.S. 93, 118 S. Ct. 488, 493, 139 L. Ed. 2d 450 (1997) and *State v. Catlett*, 133 Wn.2d 355, 368-69, 945 P.2d 700 (1997); bills of attainder, *Selective Serv. Sys. v. Minnesota Pub. Interest Research Group*, 468 U.S. 841, 847, 104 S. Ct. 3348, 82 L. Ed. 2d 632 (1984); excessive fines, *Austin v. United States*, 509 U.S. 602, 610, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993) and *State v. Clark*, 124 Wn.2d 90, 102-03, 875 P.2d 613 (1994). We therefore consider first whether the deductions are punitive.

 Determining whether punishment has been imposed can be "extremely difficult and elusive of solution." *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963). The constitutional line is drawn "between civil, remedial actions brought primarily to protect the government from financial loss and actions

intended to authorize criminal punishment to vindicate public justice." *United States ex rel Marcus v. Hess*, 317 U.S. 537, 548-49, 63 S. Ct. 379, 87 L. Ed. 443 (1943). The inquiry begins with the fundamental question of legislative intent: has the Legislature, " 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' " *See Hudson*, 522 U.S. at 99 (quoting *United States v. Ward*, 448 U.S. 242, 248, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980)); *see also Catlett*, 133 Wn.2d at 365; *Ward*, 123 Wn.2d at 499. If the Legislature intended punishment, the inquiry ends there. If the Legislature intended the mechanism to be civil, the provision must still not be " 'so punitive as to either purpose or effect' " as to " 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.' " *Hudson*, 522 U.S. at 99 (quoting *Ward*, 448 U.S. at 248-49 and *Rex Trailer Co. v. United States*, 350 U.S. 148, 154, 76 S. Ct. 219, 100 L. Ed. 149 (1956)); *see also Ward*, 123 Wn.2d at 499.

The first question then is whether the Legislature expressly or impliedly indicated a punitive purpose. Retributive or deterrent aims evidence a preference for a criminal penalty. *See, e.g., Ward*, 123 Wn.2d at 499. On the other hand, if a statute may fairly be characterized as remedial and the sanction bears a rational relation to the remedial purpose, it is not punitive. *See Catlett*, 133 Wn.2d at 366.

Here, there is no explicit expression of intent regarding the deductions, so we look to the underlying purpose. The challenged statutes are incorporated in the Department of Corrections chapter of the REVISED CODE OF WASHINGTON (RCW 72.09), which contains a myriad of objectives set forth in the first section of the chapter, entitled "Legislative Intent." The first objective is that the system should ensure public safety. RCW 72.09.010(1). The second objective is that "the system should punish the offender . . . [and] punishment should generally be limited to the denial of liberty of the offender." RCW 72.09.010(2). The express preference for limiting punishment to the denial of liberty

is an implicit but strong indication of remedial intent for other provisions (although not all other objectives are exclusively remedial, *see* RCW 72.09.010(3) (deterrence), and RCW 72.09.010(7) (restitution)).

The wage and received fund deduction statutes themselves appear principally, if not exclusively, directed to remedial purposes. The deducted funds are dedicated to incarceration costs, compensation for victims of crime, and a savings account (up to a small maximum) for inmates until their release. *See* RCW 72.09.111(1)(a).[7]

A sanction is remedial if it serves to make the government whole for the damages and injury caused to it by the person being sanctioned. *Helvering v. Mitchell*, 303 U.S. 391, 401, 58 S. Ct. 630, 82 L. Ed. 917 (1938); *Hess*, 317 U.S. at 548-49. In *Catlett*, our Supreme Court characterized a forfeiture statute as serving nonpunitive goals: "The statute is designed to reimburse government for its prosecutorial costs." *See Catlett*, 133 Wn.2d at 368. The purpose of collecting reimbursement for costs of incarceration is thus remedial, not punitive.

With regard to the crime victim compensation deduction, we note that the district judge in *Wright v. Riveland* viewed the deduction as analogous to restitution, and therefore remedial under *State v. Rhoda*, 206 N.J. Super 584, 503 A.2d 364 (1986). Our Supreme Court has indicated, however, that restitution in Washington is punitive, despite the fact that it compensates the victim. *See, e.g., State v. Moen*, 129 Wn.2d 535, 539-40 n.1, 919 P.2d 69 (1996) (primary purpose of restitution is not compensation of victims, but rehabilitation and deterrence.)[8] The analogy that persuaded the district judge is thus inconsistent with our case law.

Whether or not restitution is characterized as punitive,

---

[7]Metcalf is exempt from the savings account requirement because of his sentence to life without parole, see RCW 72.09.111(1), and makes no arguments specific to that provision. We note our agreement with the district judge's comment in *Wright v. Riveland* that "while enforced savings . . . might be chafing, it is plainly not punitive."

[8]*But see State v. Hartke*, 89 Wn. App. 143, 147, 948 P.2d 402 (1997) (juvenile restitution is compensatory, not punitive).

however, we see significant differences between the compensation deduction at issue here and restitution ordered at sentencing. The deduction is distributed to the state victim's compensation fund and not to any particular victim; indeed, the deduction is automatic from every prisoner who receives funds, regardless of whether the prisoner's crime of conviction involved restitution. It is therefore not directly retributive, and its purpose is to increase the likelihood of compensation for crime victims in general, not for the particular victim of the prisoner's crime. The crime victim penalty assessment imposed at sentencing has recently been held not punitive, *see State v. Humphrey*, 91 Wn. App. 677, 684, 959 P.2d 681 (1998), and we find nothing in the statute to indicate that the Legislature had a purpose of punishment rather than compensation in imposing the deduction requirement. Further, the crime victim compensation deduction is a very small part (about 14 percent) of the overall deduction scheme, the remainder of which has clearly remedial purposes.

We conclude that the legislative purpose in these amendments is remedial. We therefore turn to the question whether the provisions are so punitive as to transform the deductions into a criminal penalty despite their remedial purpose. To determine whether such a transformation has occurred, we consider the factors developed in *Mendoza-Martinez*: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose. 372 U.S. at 168-69; *see also Hudson*, 522 U.S. at 99-100; *Ward*, 123 Wn.2d at 499. These factors must be considered "in relation to the statute on its face." *Hudson*, 118 S. Ct. at 493 (quoting *Mendoza-Martinez*, 372 U.S. at 169). In order to override a remedial legislative

intent, these factors must, on balance, demonstrate a punitive effect by the "clearest proof." *See Hudson*, 522 U.S. at 100; *Ward*, 123 Wn.2d at 510.

The first *Mendoza-Martinez* factor examines whether the sanction involves an affirmative disability or restraint. Here, the two statutes effectively garnish 35 percent of any funds the prisoner receives for the duration of his or her sentence. This is a significant burden, but the "affirmative disability or restraint" factor is not easily satisfied. In *Hudson*, the sanctions under examination included monetary penalties and occupational debarment imposed by the Comptroller of the Currency as a sanction for certain banking practices. Holding that later criminal prosecution for the same conduct was not barred by the double jeopardy clause, the United States Supreme Court held that "the sanctions imposed do not involve an 'affirmative disability or restraint' as that term is normally understood. [Occupational debarment is] 'certainly nothing approaching the 'infamous punishment' of imprisonment.'" 522 U.S. at 104 (quoting *Flemming v. Nestor*, 363 U.S. 603, 617, 80 S. Ct. 1367, 4 L. Ed. 2d 1435 (1960)). By analogy here, the additional burden of mandatory contributions toward the costs of an inmate's keep and toward the compensation of victims of crime is not "an affirmative disability or restraint."

As to the second factor, the sanction has historically not been regarded as punishment. "[M]oney penalties . . . have [not] historically been viewed as punishment." *Hudson*, 522 U.S. at 104. " '[T]he payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforceable by civil proceedings since the original revenue law of 1789.'" *Id.* at 104 (quoting *Helvering*, 303 U.S. at 400).

Factor three asks whether the sanction comes into play only on a finding of scienter. It generally does at least follow a finding of scienter, because deductions can only be made after a criminal conviction results in incarceration. But the relationship is entirely indirect. Scienter plays no

part in triggering the deduction; prisoners without funds do not accrue future obligations, and those convicted but not imprisoned also do not incur these obligations.

Fourth, the deductions do not promote the traditional aims of punishment, i.e., retribution and deterrence. It is unlikely that deterrence would result from the Legislature's allocation of prisoner funds, but even if so, it is recognized that "all civil penalties have some deterrent effect," *Hudson*, 522 U.S. at 102, and "deterrence 'may serve civil as well as criminal goals.' " *Id.* at 105 (quoting *United States v. Ursery*, 518 U.S. 267, 292, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996).

Fifth, whether the sanction applies to behavior that is already a crime depends upon whether the deduction is seen as applying to the crime for which a prisoner is incarcerated, or to the status of being an inmate. Like factor three, this factor illustrates the considerable confusion which can characterize the punitive-nonpunitive analysis. *See Hudson*, 522 U.S. at 103. While it is true that every inmate has been convicted of some crime, the deductions are not concerned with what crime, or how many, or how serious; the deductions apply equally to all inmates. No behavior is involved, per se; rather, the triggering event is receipt of funds in an inmate's account. In addition, the fact that the punishment statutes are found elsewhere (in the Sentencing Reform Act, Chapter 9.94A RCW), and that the deduction statutes were enacted later and codified in a separate chapter, dilutes the force of this *Mendoza-Martinez* factor. *See United States v. Ward*, 448 U.S. 242, 249-51, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980); *see also One Lot Emerald Cut Stones & One Ring v. United States*, 409 U.S. 232, 236, 93 S. Ct. 489, 493, 34 L. Ed. 2d 438 (1972). We conclude the deductions are not sanctions applied to behavior that is already a crime.

The remaining factors examine whether the sanction has a rational nonpunitive purpose, and whether the sanction is excessive in relation to that purpose. Recovery of incarceration costs is a nonpunitive purpose, and certainly

it is rational. And, as applied to Metcalf, the sanction is not excessive; over the course of two years, he has been assessed less than $2,000, a figure well below the cost of incarcerating him. Compensation for crime victims also is certainly a rational, nonpunitive purpose, and the maximum deduction of five percent for this purpose is not excessive.

The picture which emerges from this examination of the *Mendoza-Martinez* factors does not demonstrate that the fund deductions are criminal penalties. The deductions operate essentially like a tax on prisoners, not as a punishment for their criminal conduct. Our conclusion that the deductions are remedial therefore stands. And from this conclusion, it follows that all Metcalf's federal (and analogous state) constitutional claims fail.

OTHER STATE CONSTITUTIONAL CLAIMS

*Single Subject Rule.* Metcalf argues that the wage deduction statute should be voided because it was enacted in a bill that contained more than one subject, contrary to article II, section 19 of the Washington Constitution.[9] Metcalf asserts that the title of the bill that amended the wage deductions statute to add the challenged deductions was "Enacting programs to reduce youth violence." This is not correct. The title of the bill he refers to, Engrossed Second Substitute House Bill 2319, is actually "AN ACT Relating to violence prevention." LAWS OF 1994, 1st Sp. Sess., ch. 7, at 2196. This title is a general one,[10] and our courts have "long recognized that a general title consisting of a few well-chosen words, suggesting the general subject stated, is all that is necessary to comply with" article II, section 19. *In re Boot*, 130 Wn.2d 553, 566, 925 P.2d 964 (1996). "Where the title is general, 'any subject

---

[9] Metcalf makes no similar challenge with regard to the received funds deduction statute.

[10] Metcalf does not argue that the title is restrictive and, thus, we need not determine whether it "expressly limits the scope of the act." *State v. Broadaway*, 133 Wn.2d 118, 127, 942 P.2d 363 (1997).

reasonably germane to such title may be embraced within the body of the bill.' " *Id.* (quoting *Washington Fed'n of State Employees v. State*, 127 Wn.2d 544, 555-56, 901 P.2d 1028 (1995)). The challenged deductions are "reasonably germane" to the title of the bill at issue as they are allocated to offset prison costs and to compensate crime victims. *See* RCW 72.09.111(1)(a)(i).

Metcalf also argues that the Legislature's decision to prohibit "[m]otion pictures unrated after November 1968 or rated X or NC-17 . . . [from] adult correctional facilities" violates the single subject mandate. LAWS OF 1994, 1st Sp. Sess., ch. 7, § 808, at 2343. But because he misidentified the bill's title, he only argues that this decision bears no rational relation to reducing youth violence. He does not argue that it bears no rational relation to reducing violence in adult correctional facilities. Metcalf has thus not suggested any constitutional violation.

■■ ■ *Scope and Object Rule.* Metcalf also claims that the 1994 amendment to the wage deduction statute violates the constitutional mandate that amendments do not change the "scope and object of the bill." *See* CONST. art. II, § 38; see also LAWS OF 1994, 1st Sp. Sess., ch. 7, § 534, at 2309-10. This mandate is designed to give notice to those affected by an existing law of any change and to protect the Legislature and the public from deceptive practices. "The scope of a bill refers to the boundaries or limits of the legislation, sometimes referred to as a bill's ultimate intention. The object of legislation is its aim, purpose, end, or goal." *Washington Federation*, 127 Wn.2d at 570 n.5 (Talmadge, J., concurring in part, dissenting in part) (quoting SENATE JOURNAL, 50th Legis., Reg. Sess. 761 (Wash. 1988)).

■■ Here, the challenged amendment changed neither the scope nor the object of the bill. Rather, the amendment only modified the proportions of the deductions and added new deductions for class II, III, and IV work programs—deductions that mirrored those that already applied to class I work programs. *See* LAWS OF 1994, 1st Sp. Sess., ch. 7, § 534, at 2309-10. There is thus no violation of article II, section 38.

*Impairment of Contracts.* Metcalf also claims that the statutes impair the obligation of contracts under Washington Constitution article I, section 23, thus invalidating his plea agreement. His argument is that when he entered his plea, the State required no payment for "food, clothing, housing, medical, dental, personal hygiene, and recreational activities." Metcalf therefore argues that the deductions amount to legislative interference in the contract represented by his plea agreement. This claim is entirely frivolous. Metcalf does not even assert that the terms of the plea agreement addressed any of these issues.

 *Special Legislation.* Metcalf next claims that the statutes violate the constitutional prohibition against special legislation for changing the names of persons, for remitting fines, and for limitation of criminal acts. *See* CONST. art. II, § 28(1), (14), (17). Unconstitutional special legislation is that which operates upon a single person or entity, as opposed to that which operates upon all things or people within a class. When the challenged legislation applies to a class, "such legislation is upheld '[s]o long as [the class] bears a rational relationship to [a legitimate] purpose and subject matter of the legislation.' " *See, e.g., CLEAN v. State*, 130 Wn.2d 782, 802, 928 P.2d 1054 (1996) (quoting *City of Seattle v. State*, 103 Wn.2d 663, 674, 694 P.2d 641 (1985)).

 Here, the challenged statutes apply to equally situated members of the prison population. A purpose of the legislation is to better manage costs of the penal system. *See* RCW 72.09.010(6). The class to which the legislation is directed is rationally related to this purpose. Metcalf therefore has shown no violation of Washington Constitution article II, section 28.

*Other.* Finally, Metcalf claims that the statutes (1) impinge upon his First Amendment right to petition the government and (2) violate the Washington constitutional mandates that (a) "the legislature shall by law provide for the working of convicts for the benefit of the state," *see* CONST. art. II, § 29, and (b) the State foster and support

penal institutions, *see* CONST. art. XIII, § 1. These claims are simply frivolous.

## Motion for Injunctive Relief Regarding Library Access

 Metcalf prays for injunctive relief ordering him unfettered access to the prison's law library, complaining that he was once unjustly denied access. This occasion, however, appears to be an isolated occurrence. Metcalf has not suggested otherwise; nor does he claim that this denial prejudiced him. There is thus no need to issue an injunction.

## Calculation Errors, Excessive Deductions

Finally, Metcalf claims that even if the deduction statutes are valid, the Department of Corrections has miscalculated and deducted amounts in excess of those authorized by the statutes. The Department responds that Metcalf misunderstands the record and confuses other mandatory deductions with those at issue here. We decline to recalculate the amounts involved over the several years of this controversy, and simply note that the Department indicates Metcalf can file a grievance if he is dissatisfied with the calculations.

The petition is denied.

KENNEDY, C.J., and GROSSE, J., concur.