# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| VALLEY CITIES COUNSELING AND CONSULTATION, <br><br>         Respondent, <br><br>         v. <br><br> EZRA L. EDDINES, <br><br>         Appellant. | No. 84964-6-I <br><br> DIVISION ONE <br><br> PUBLISHED OPINION |

FELDMAN, J. — In 2021, Washington adopted an amendment to the Residential Landlord Tenant Act (RLTA) allowing landlords to evict a tenant who "continues in possession of a dwelling unit in transitional housing after having received at least 30 days' advance written notice to vacate . . . [when] the tenant has completed an educational or training or service program and is no longer eligible to participate in the transitional housing program." RCW 59.18.650(2)(j). Acting pursuant to this provision, Valley Cities Counseling and Consultation (Valley) attempted to evict Ezra Eddines after he no longer met the criteria for the applicable transitional housing program. In response, Eddines argued that Auburn City Code (ACC) 5.23.070.A forbids eviction in these same circumstances. Because the city ordinance categorically forbids what state law permits, the superior court correctly concluded that the ordinance is preempted by

state law. On interlocutory review, we affirm and remand for proceedings consistent with this opinion.

I

Eddines is a tenant in a transitional housing unit as part of a program run by Valley. The program provides transitional housing to tenants who have an income of 30 percent or below the area median income and who would otherwise be unhoused. On February 25, 2022, Valley gave Eddines notice that his tenancy would be terminated because his income was more than 30 percent of the area median income and he had not accessed program services in the past year, making him ineligible for the transitional housing program.

When Eddines refused to vacate and surrender his transitional housing unit, Valley filed a complaint for unlawful detainer. A superior court commissioner scheduled a show cause hearing. In support of its unlawful detainer action, Valley argued that RCW 59.18.650(2)(j) (quoted below) permits a landlord to evict a tenant where, as here, the tenant continues in possession of a transitional housing unit after the tenant is no longer eligible for the transitional housing program. In response, Eddines argued that Auburn's just cause ordinance, ACC 5.23.070.A (also quoted below), does not permit a landlord to evict a tenant in this circumstance.

The commissioner ruled in favor of Valley, concluding that ACC 5.23.070 is "pre-empted to the extent that it conflicts with RCW 59.18.650(2)(j)." Eddines thereafter filed a motion for revision. The superior court denied the motion, stating:

> Applying the rules of conflict pre-emption, this Court agrees with
> Commissioner Hillman that the state law and city ordinance cannot

be harmonized, an irreconcilable conflict exists, and that his order below is correct. This Court DENIES Eddines' Motion for Revision.

The superior court subsequently certified its ruling for interlocutory review under RAP 2.3(b)(4). This court accepted the superior court's certification and granted discretionary review.

II

Eddines claims the superior court erred in ruling that ACC 5.23.070.A is preempted by RCW 59.18.650. We disagree.

A

"[A] state statute preempts an ordinance on the same subject [1] if the statute occupies the field, leaving no room for concurrent jurisdiction, or [2] if a conflict exists such that the statute and the ordinance may not be harmonized." *Lawson v. City of Pasco*, 168 Wn.2d 675, 679, 230 P.3d 1038 (2010). The first part of this quote describes field preemption, and the second part describes conflict preemption. Here, Valley argues only conflict preemption, which "arises when an ordinance permits what state law forbids or forbids what state law permits." *Id.* at 682. Whether ACC 5.23.070.A is preempted by RCW 59.18.650 is a question of law and is reviewed de novo. *Rental Hous. Ass'n v. City of Seattle*, 22 Wn. App. 2d 426, 437, 512 P.3d 545 (2022) (*RHA*).

Applying conflict preemption principles to the state statute and local ordinance at issue here, the superior court correctly concluded that the state statute preempts the local ordinance. The state statute at issue, RCW 59.18.650, prohibits residential landlords from evicting a tenant, refusing to continue a tenancy, or ending a periodic tenancy except in enumerated circumstances that

constitute just cause. One of the enumerated circumstances is when:

> The tenant continues in possession of a dwelling unit in transitional housing after having received at least 30 days' advance written notice to vacate . . . [when] the tenant has completed an educational or training or service program and is no longer eligible to participate in the transitional housing program.

RCW 59.18.650(2)(j). Auburn's ordinance, ACC 5.23.070.A, contains a similar just cause restriction:

> Owners of housing units shall not evict or attempt to evict any tenant, refuse to renew or continue a tenancy after expiration of the rental agreement, or otherwise terminate or attempt to terminate the tenancy of any tenant unless the owner can prove in court that just cause exists. . . . *The reasons for termination of tenancy listed below, and no others, shall constitute just cause under this section*.

(Emphasis added.) The ordinance lists 14 circumstances that constitute just cause under the provision, but lacks any transitional housing exception as provided in the state statute. *Id.*

Because the Auburn ordinance specifies that *no* reason beyond the 14 specified reasons is just cause for eviction, it forbids what state law permits, which is eviction of tenants from transitional housing units when, as here, they are no longer eligible to participate in the transitional housing program. Thus, as the superior court concluded, "the state law and city ordinance cannot be harmonized" and "an irreconcilable conflict exists." Accordingly, the superior court correctly ruled, by denying Eddines' motion for revision, that the city ordinance is preempted by RCW 59.18.650.[1]

---

[1] Valley relies heavily on our unpublished opinion in *Rental Housing Association of Washington v. City of Burien*, No. 82782-1-I (Wash. Ct. App. Aug. 29, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/827821.pdf. (City of Burien). "No matter how well reasoned, unpublished opinions of this court lack precedential value, in part because they merely restate well established principles." *State v. Nysta*, 168 Wn. App. 30, 44, 275 P.3d 1162 (2012). Consistent with this observation, *City of Burien* is in accord with our analysis and holding

B

At oral argument in this matter, Eddines effectively conceded that ACC 5.23.070.A forbids what RCW 59.18.650(2)(j) permits.[2]  He nevertheless raises three arguments why preemption does not apply here.  First, he argues that the result here is controlled by three cases that avoid preemption by harmonizing local and state law.  Second, he claims that the state statute at issue here does not provide an affirmative right for landlords to evict tenants.  Third, he contends that the Washington legislature did not intend to preempt local ordinances.  Each of these arguments fails.

1

Starting with Eddines' argument that the result here is controlled by three cases where the court was able to harmonize local and state law, the first case cited by Eddines is *Kennedy v. City of Seattle*, 94 Wn.2d 376, 617 P.2d 713 (1980), which is one of the seminal cases on this topic.  The plaintiffs there owned two houseboat moorage sites in Seattle, one of which hosted the defendant's houseboat which the plaintiffs sought to evict.  *Id*. at 378.  Seattle had adopted an ordinance that made it unlawful to evict a houseboat from a moorage site except for six specified reasons, and the plaintiffs argued that the ordinance was preempted by state statutes regarding forcible entry and forcible and unlawful detainer actions.  *Id.* at 379-84 (citing RCW 59.12 and RCW 59.18 (the RLTA)).

here.  The city ordinance at issue in that case (Burien Municipal Code 5.63.070(1)) prohibited all evictions at the end of a rental agreement without cause while the two state statutes at issue (RCW 59.12.030 and RCW 59.18.290) expressly allowed for termination and eviction to take place at the end of a rental agreement.  Given this categorical conflict, we held in *City of Burien*—similar to our holding here—that the Burien ordinance was preempted by state law.  Slip op. at 6.

[2]Wash. Ct. of Appeals oral argument, *Valley Cities Counseling and Consulting v. Eddines*, No. 84764-6-I (June 11, 2024) 1 min., 8 sec. through 1 min., 32 sec. (on file with court).

Although the court ultimately concluded that the ordinance was unconstitutionally prohibitory and confiscatory, it rejected the plaintiffs' preemption argument, stating, "The ordinance does not raise further procedural barriers between landlord and tenant but simply represents another defense." *Id.* at 384.

The second case Eddines claims is controlling here is *Margola Associates v. City of Seattle*, 121 Wn.2d 625, 854 P.2d 23 (1993), *abrogated on other grounds by Chong Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019), which expands on the brief discussion of conflict preemption in *Kennedy*. The plaintiff in *Margola* argued that state law preempted a Seattle ordinance that required owners of buildings with multiple housing units to obtain and post each year a certificate establishing that the building was registered with the City and created an affirmative defense to eviction if the landlord did not register the rental unit in accordance with the ordinance. *Id.* at 632. The court rejected the preemption argument, reasoning that there was no conflict between the state statute and the city ordinance because the city ordinance only added an additional requirement to the eviction process established by the RLTA. *Id.* at 651-54.

The third case Eddines claims is controlling here is *RHA*. The plaintiff there challenged both Seattle's "winter eviction ban," which created a defense to eviction if the tenant would have to vacate the housing unit between December 1 and March 1, and its six-month extension of the eviction moratorium during the COVID-19 pandemic. 22 Wn. App. 2d at 432-36. In holding that the Seattle ordinances were not preempted, the court emphasized that the ordinances merely provided "a temporary defense to evictions," noting that "a landlord can file an unlawful detainer action, obtain an order finding the tenant to be in unlawful detainer status,

6

and ask the court to schedule the issuance of a writ of restitution" once the moratorium has passed. *Id.* at 441. The court emphasized, "There is nothing in the unlawful detainer statute that requires an eviction occur within any specific period of time." *Id.*

These cases do not control the result in this case. Starting with *Kennedy*, the court there did not elaborate on what constitutes a "procedural barrier," addressed an argument premised on field preemption as opposed to conflict preemption,[3] and never reached the issue that is dispositive here, which is whether a city ordinance is preempted by state law if it categorically removes a cause for eviction that is permitted by state law. 94 Wn.2d at 384. Turning to *Margola* and *RHA*, Eddines' argument overlooks important differences between the Auburn ordinance and the ordinances at issue in those two cases. The ordinance in *Margola* does not preclude the landlord from ever bringing the eviction proceeding; instead, it merely adds a requirement for landlords to be registered with the city and, once the landlord is so registered, no longer prohibits eviction. Similarly, the ordinance in *RHA* does not preclude a landlord from obtaining a writ of restitution; it only narrows when the writ can be executed. In both *Margola* and *RHA*, the defense provided by local law is temporary and either the passage of time or some action by the landlord will allow the eviction to proceed. When a city merely imposes a temporary prohibition on a landlord's ability to evict a tenant, the

---

[3] While the court's analysis in *Kennedy* refers to conflict preemption principles, its opinion indicates that the plaintiffs' argument was premised solely on field preemption. *See* 94 Wn.2d at 384 ("Plaintiffs claim RCW 59.12, dealing with forcible entry and forcible and unlawful detainer, preempts the field.").

landlord can still do what state law permits, allowing "harmonization" of ordinance and statute.

In contrast, Auburn provides no way for a landlord that owns and operates a transitional housing unit to evict a tenant due to ineligibility, a circumstance in which RCW 59.18.650 expressly permits eviction. The landlord's claim of unlawful detainer is not merely delayed like it would be under the defenses provided in *Margola* and *RHA*; rather, the claim is categorically unavailable. In other words, instead of the state law saying, "this is permitted," and the local ordinance saying, "this is permitted if…," when RCW 59.18.650 says, "this is permitted," the Auburn ordinance says, "this is forbidden." Because a categorical conflict exists here that was not present in *Kennedy*, *Margola*, and *RHA*, these cases are distinguishable.

2

Eddines next claims that RCW 59.18.650 does not provide an affirmative right for landlords to evict tenants. We reject this argument because it does not account for the broader statutory scheme of the state's landlord-tenant laws.

Eddines cites two cases in support of his interpretation of RCW 59.18.650, the first of which is *Rabon v. City of Seattle*, 135 Wn.2d 278, 957 P.2d 621 (1998). Rabon had previously been convicted of owning "vicious" dogs in violation of a Seattle ordinance making it unlawful to own a vicious animal with knowledge that the animal is vicious or with reckless disregard to the animal's viciousness. *Id*. at 283. When the city notified Rabon that it intended to destroy the dogs pursuant to the ordinance, he argued he should be able to register the dogs in accordance with RCW 16.08.080, which provides that "it is unlawful to own a 'dangerous' dog unless it is registered with local animal control authorities." *Id.* Rabon claimed the

ordinance was preempted by the statute because the latter read, "the animal control authority . . . *shall* issue a certificate of registration" when certain statutory requirements for keeping a dangerous dog were met. *Id.* at 289-90 (emphasis added). The court rejected this argument because the statutory scheme as a whole indicated that the legislature had not intended to preempt local ordinances. *Id.* at 290. The court focused on RCW 16.08.090(2), which provided that only local authorities had power to regulate "potentially dangerous" dogs. The court reasoned that if the legislature intended to preempt local authority, it would have stated that only state authorities can regulate "dangerous dogs." *Id.* at 290-91.

Rabon further argued that the ordinance prohibited what state law allowed, triggering conflict preemption. *Id.* at 292. The court also rejected this argument, reasoning that just because an activity *may* be licensed under state law does not mean it *must* be permitted by local law. *Id.* The court disagreed with Rabon's argument that the use of "shall" in the statute created an affirmative right, reasoning that, in the context of the statute and in light of its purpose, "shall" was not a command to issue licenses if the criteria were met but was instead meant to establish minimum requirements for a lawful license under state law. *Id.* at 293. Accordingly, the court concluded that a more protective city ordinance prohibiting ownership of vicious or dangerous dogs could be harmonized with state law. *Id.* at 293-94.

In the second case cited by Eddines, *Emerald Enterprises, LLC v. Clark County*, 2 Wn. App. 2d 794, 800, 413 P.3d 92 (2018), the Washington legislature, pursuant to a voter initiative to decriminalize cannabis, created a regulatory licensing scheme for the sale of cannabis through the Washington State Liquor

and Cannabis Board (Board). The Board established requirements for cannabis retailer licenses, including a maximum number of stores per county and mandatory background checks for applicants. *Id.* In response, Clark County passed Clark County Code 40.260.115(B)(3), which forbade the sale of recreational cannabis in unincorporated Clark County. *Id.* at 801. Emerald Enterprises challenged the ordinance, arguing it was preempted by the state's licensing requirements. *Id.* Following *Rabon*, the court rejected this preemption argument because the statute's language that "[t]here shall be a marijuana retailer's license" (RCW 69.50.325(3) and "retail licenses 'may be licensed'" (RCW 69.50.354) indicated there was no underlying, affirmative right to obtain a license or requirement that local governments must issue licenses. *Id.* at 805. The fact that retailer licenses were limited regardless of the number of qualified applicants also implies that no such right exists. *See id.* at 800.

Relying on *Rabon* and *Emerald Enterprises*, Eddines argues that landlords do not have an affirmative right to evict tenants under RCW 59.18.650 and that Auburn may therefore provide additional protection from eviction that is not provided by state law. But unlike the statutes at issue in *Rabon* and *Emerald Enterprises*, the larger statutory scheme of the RLTA does provide a right for landlords to evict tenants. RCW 59.18.290(2) provides, "[a]ny landlord so deprived of possession of premises in violation of this section may recover possession of the property and damages sustained by him or her." By permitting landlords to recover possession in specified circumstances, RCW 59.18.290(2) creates an affirmative right to do so and thus preempts a local ordinance that categorically forbids eviction in the exact same circumstances.

10

Eddines' argument also fails because it ignores the overall statutory scheme of the RLTA and the other landlord-tenant statutes in chapter 59 RCW. In *Rabon* and *Emerald Enterprises*, the relevant state law and city ordinance could be harmonized because the state law provided what was necessary for a valid license, but neither the dangerous dog nor the cannabis retailer licensing laws were embedded in statutory schemes that provided affirmative rights to the activity, leaving the question of whether to license those activities up to the local governments. Here, in contrast, the state law entitles Valley to evict someone from its property. Although RCW 59.18.650 imposes just cause restrictions on residential evictions in most cases, it deliberately carves out an exception for landlords of transitional housing units seeking to evict a tenant who is ineligible for the transitional housing program. These carveouts do not create gaps where the law has not spoken, but rather designate spaces where the default rules still apply. Thus, statutes such as RCW 59.12.030 and RCW 59.18.290, which permit landlords to recover possession, create an affirmative right that conflicts with a local law, such as ACC 5.23.070, that categorically eliminates this right.

3

Lastly, Eddines asserts that the legislative history of RCW 59.18.650 indicates the legislature did not intend to preempt local ordinances but rather to set a baseline protection for tenants upon which local governments could expand. We disagree.

The goal of statutory analysis is to carry out the legislature's intent. *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010). The first step is to examine the statute's plain meaning, and if that meaning is unambiguous then our

inquiry ends. *Id.* Plain meaning "is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Id.* (quoting *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009)).

Here, neither the text nor the surrounding context of RCW 59.18.650 suggests the legislature intended to authorize local governments to provide additional protections for tenants that would render state law meaningless. Although RCW 59.18.650 exists to restrict evictions without cause, it exists within the RLTA, which aims to balance tenant and landlord rights, not merely protect tenants.[4] To that end, RCW 59.18.650(2) deliberately carves out exceptions to its general prohibition, including an exception for landlords of transitional housing units seeking to evict a tenant who is ineligible for the transitional housing program. RCW 59.18.650(2)(j). Absent such an exception, transitional housing programs may face penalties, lose funding, and be shut down if they cannot remain compliant with their funding grants. We decline to read Eddines' proffered legislative intent into the statute where there is no evidence for it in the statute's text or broader context. Eddines' final argument against conflict preemption, like the others, thus fails.

III

Both parties request attorney fees on appeal. Because this is an interlocutory appeal and neither party has yet prevailed in the matter, we decline

---

[4] *Compare* RCW 59.18.290(1) (requiring a court order before a landlord may recover possession of a housing unit from a tenant at the end of a rental agreement) *with* RCW 59.18.290(2) (allowing a landlord to recover possession of property when a tenant has unlawfully remained after the end of a rental agreement).

to award attorney fees on appeal at this time. *See Leda v. Whisnand*, 150 Wn. App. 69, 87, 207 P.3d 468 (2009) ("Because . . . no party has yet prevailed on the merits, any determination of the prevailing party on appeal would . . . be premature."). Instead, we remand this issue to the superior court to award attorney fees to the prevailing party, including fees on appeal, if appropriate under the RLTA and/or the parties' rental agreement, when prevailing party status can properly be determined.

Affirmed and remanded.

WE CONCUR:

Feldman, J.

Chung, J.

Coburn, J.