226 P.3d 131 (2010)
STATE of Washington, Respondent,
v.
Robert Bustmante GONZALEZ, Appellant.
No. 81525-9.
Supreme Court of Washington, En Banc.
Argued March 24, 2009.
Decided February 18, 2010.
*132 Jeffrey Goldstein, Law Office of Jeff Goldstein, Seattle, WA, for Appellant.
D. Angus Lee, Grant County Prosecutor's Office, Ephrata, WA, Teresa Jeanne Chen, Attorney at Law, Soap Lake, WA, for Respondent.
FAIRHURST, J.
¶ 1 Robert Bustmante Gonzalez seeks to reverse an order modifying the total amount of his restitution. He argues that the State violated RCW 9.94A.753, the restitution statute, when it sought to modify his restitution order more than two years after the order was originally entered. He also argues that imposing additional restitution constituted a second punishment in violation of double jeopardy. We reject both of Gonzalez's arguments and affirm the order of the trial court.

I. FACTUAL AND PROCEDURAL HISTORY
¶ 2 On March 23, 2003, Gonzalez struck Denny Thoren in the face and robbed him of his truck. The blow crushed the right side of Thoren's face. Thoren was airlifted to Harborview Medical Center and underwent extensive reconstructive surgery. Even after surgery, Thoren lost most of the vision in his right eye.
¶ 3 A court found Gonzalez guilty of first degree assault and first degree robbery. On January 5, 2004, Gonzalez was sentenced to 288 months in prison and was ordered to pay $21,306.45 in restitution to the crime victims' compensation program (CVCP). On June 28, 2004, the restitution order was amended to correct a clerical error, and the amount was reduced to $20,886.60. Gonzalez appealed his conviction, and the Court of Appeals affirmed.
¶ 4 After restitution was ordered, Thoren continued to accrue medical bills which *133 CVCP continued to pay. When Thoren's medical treatment was complete, CVCP paid Thoren $22,624.99 for permanent partial disability due to his injuries. In addition to the payment for permanent partial disability, CVCP paid Thoren $7,594.91 for time loss and $16,228.00 for medical expenses. In total, CVCP paid Thoren $46,447.90 for the injuries sustained on March 23, 2003.
¶ 5 On June 30, 2006, 907 days after sentencing, the State moved for an amended order of restitution to add $25,561.30 to the order of restitution. The total would then match the $46,447.90 that CVCP had paid because of Thoren's injuries. Gonzalez challenged the motion, arguing that it could not be brought more than 180 days after sentencing and that it violated double jeopardy. The trial court granted the motion and amended the restitution order. Gonzalez appealed to the Court of Appeals, Division Three, and then moved to transfer his appeal to this court. We granted Gonzalez's motion to transfer.

II. ISSUES
A. Did the amended restitution order violate RCW 9.94A.753 when it was entered more than 180 days after Gonzalez was sentenced?
B. Did the amended restitution order violate double jeopardy?

III. ANALYSIS
A. The amended restitution order did not violate RCW 9.94A.753 when it was entered more than 180 days after Gonzalez was sentenced
¶ 6 A court's authority to order restitution is derived solely from statute. State v. Smith, 119 Wash.2d 385, 389, 831 P.2d 1082 (1992). The amended restitution order in this case is governed by RCW 9.94A.753.[1]
*134 ¶ 7 Gonzalez argues that the amended restitution order was untimely because it was entered more than 180 days after entry of the judgment and sentence. RCW 9.94A.753(1) provides that the amount of restitution shall be set at the sentencing hearing or within 180 days unless the court continues the restitution hearing beyond the 180 days for good cause. RCW 9.94A.753(1) provides for an exception to this requirement that is found in RCW 9.94A.753(7). Under RCW 9.94A.753(7), if no restitution order has been entered and the victim is entitled to benefits through the CVCP, the Department of Labor and Industries has one year from sentencing to petition for entry of a restitution order. Gonzalez argues that the order amending the restitution amount on June 30, 2006, was untimely because it was entered beyond the 180 day period, the State did not seek a continuance for good cause, and the requirements of RCW 9.94A.753(7) were not met.
¶ 8 The State asserts that the amendment was proper under RCW 9.94A.753(4). RCW 9.94A.753(4) provides that "restitution may be modified as to amount, terms, and conditions." Whether the amended order was appropriate in this case turns on the meaning of the word "amount." Gonzalez argues that the term "amount" is ambiguous because it may mean either the total amount of restitution or the amount of the monthly payment. He argues that we should construe "amount" to mean the monthly payment amount. The State argues that "amount" means the total amount of restitution.
¶ 9 We review questions of statutory interpretation de novo. State v. J.P., 149 Wash.2d 444, 449, 69 P.3d 318 (2003). When we interpret a statute, our goal is to carry out the legislature's intent. Burns v. City of Seattle, 161 Wash.2d 129, 140, 164 P.3d 475 (2007). The first step in interpreting a statute is to examine its plain language. State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007). Plain meaning "is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." State v. Engel, 166 Wash.2d 572, 578, 210 P.3d 1007 (2009). If the statute is unambiguous after a review of the plain meaning, the court's inquiry is at an end. Armendariz, 160 Wash.2d at 110, 156 P.3d 201. A statute is ambiguous when it is "`susceptible to two or more reasonable interpretations,' but `a statute is not ambiguous merely because different interpretations are conceivable.'" Estate of Haselwood v. Bremerton Ice Arena, Inc., 166 Wash.2d 489, 498, 210 P.3d 308 (2009) (quoting State v. Hahn, 83 Wash.App. 825, 831, 924 P.2d 392 (1996)).
¶ 10 When a statutory term is undefined, the words of a statute are given their ordinary meaning, and the court may look to a dictionary for such meaning. Id. The noun "amount" means "the total number or quantity: aggregate," "the sum of individuals," and "a principal sum and the interest on it." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 72 (2002). These definitions indicate that "amount" generally signifies a total or aggregate quantity. This court's prior use of the word "amount" within the meaning of the restitution statute supports its use as a synonym for total restitution owed. See, e.g., State v. Hunsicker, 129 Wash.2d 554, 919 P.2d 79 (1996) (employing the word "amount" in former RCW 9.94A.142, recodified as RCW 9.94A.753 (2001), to describe the principal amount of a restitution order).
¶ 11 In contrast, the word "terms" is defined as "propositions, limitations, or provisions stated or offered for the acceptance of another and determining ... the nature and *135 scope of the agreement." WEBSTER'S, supra, at 2358. The monthly payment schedule is better described as a proposition, limitation, or provision that affects the nature and scope of the agreement than as a total quantity. The dictionary definitions and prior usage in case law of the words "amount" and "terms" demonstrate that "amount" signifies total restitution.
¶ 12 When we look to the other provisions, it becomes even more clear that "amount" cannot mean "monthly payment." "[W]hen similar words are used in different parts of a statute, `the meaning is presumed to be the same throughout.'" Welch v. Southland Corp., 134 Wash.2d 629, 636, 952 P.2d 162 (1998) (internal quotation marks omitted) (quoting Cowles Publ'g Co. v. State Patrol, 109 Wash.2d 712, 722, 748 P.2d 597 (1988)). RCW 9.94A.753(1) instructs the court to "determine the amount of restitution due." (Emphasis added.) Later in the same section, the court is instructed to "set a minimum monthly payment that the offender is required to make towards the restitution that is ordered." Id. (emphasis added). Here, the legislature clearly did not contemplate "amount" to mean the amount of the "monthly payment" because it separately orders the trial court to determine both.
¶ 13 In addition, RCW 9.94A.753(2) provides a specific mechanism for adjusting the monthly payment schedule. Under that provision, a community corrections officer may determine whether there has been a change in circumstance that merits an amendment of the monthly payment schedule. Id. If the officer recommends a change, the court may reset the monthly minimum payment schedule. Id. When read in combination with RCW 9.94A.753(2), the word "amount" in RCW 9.94A.753(4) cannot reasonably be interpreted as encompassing a monthly payment schedule.
¶ 14 Even if we were to find that the word "amount" is ambiguous, legislative intent is best effectuated by interpreting "amount" to mean total quantity. When the legislature enacted the restitution statute, it clearly stated its intent that victims be afforded legal protections at least as strong as those given criminal defendants. That is, victims of crime were to be "honored and protected by law enforcement agencies, prosecutors, and judges in a manner no less vigorous than the protections afforded criminal defendants." LAWS OF 1981, ch. 145, § 1.
¶ 15 Legislative changes can also be considered when determining legislative intent. State v. Mendoza, 165 Wash.2d 913, 921, 205 P.3d 113 (2009). The legislature's amendments to the restitution statute demonstrate that the legislature has consistently sought to ensure that victims of crimes are made whole after suffering losses caused by offenders and to increase offender accountability. It established the monthly minimum payment system, for example, as part of its effort to "hold[] offenders accountable to victims ... for the assessed costs associated with their crimes" and provide "remedies for an individual or other entities to recoup or at least defray a portion of the loss associated with the costs of felonious behavior." Laws of 1989, ch. 252, § 1.
¶ 16 Thus, according to the statute's plain language and legislative history, it is clear the statute is intended to ensure that defendants fulfill their responsibility to compensate victims for losses resulting from their crimes. The plain meaning of the modification provision of RCW 9.94A.753(4) advances this intent by allowing an amendment to restitution in order to compensate a victim for losses resulting from a defendant's assault.
¶ 17 In contrast, not allowing an amendment would severely undermine the legislature's intent. Restitution must "be based on ... actual expenses incurred" for treatment or lost wages resulting from injury. RCW 9.94A.753(3). In other words, the State is not permitted to seek restitution for likely future medical costs or lost wages. If no amendment were available after 180 days, the victim would be limited to restitution for only the first six months of treatment after sentence. Disallowing amendments after 180 days would fundamentally undermine the purpose of the restitution statute where the victim is burdened with an ongoing serious injury.
*136 ¶ 18 Because of the plain language, legislative history, and legislative purpose of the restitution statute, we hold that RCW 9.94A.753(4) unambiguously allows the total amount of restitution to be modified "during any period of time the offender remains under the court's jurisdiction." Gonzalez was under the court's jurisdiction at the time the amended order was entered. See RCW 9.94A.753(4). Accordingly, we hold that the trial court did not violate RCW 9.94A.753 when it entered the amended order of restitution on June 30, 2006.

B. The amended restitution order did not violate double jeopardy
¶ 19 The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."[2] Similarly, the Washington State Constitution provides that "[n]o person shall be ... twice put in jeopardy for the same offense." Wash. Const. art. I, § 9. Washington's double jeopardy clause "is given the same interpretation the Supreme Court gives to the Fifth Amendment." State v. Gocken, 127 Wash.2d 95, 107, 896 P.2d 1267 (1995). The double jeopardy clause of the Fifth Amendment has been held to provide three protections: first, it protects against a second prosecution for the same offense after an acquittal; second, it protects against a second prosecution for the same offense after a conviction; and third, it "protect[s] against `multiple punishments for the same offense' imposed in a single proceeding." Jones v. Thomas, 491 U.S. 376, 381, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989) (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)). Gonzalez argues that the amended order of restitution constitutes multiple punishments in violation of the third protection against double jeopardy.
¶ 20 The Supreme Court addressed multiple punishments in United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). In DiFrancesco, a defendant was found to be a "dangerous special offender" under a federal statute and sentenced to two concurrent 10-year sentences. Id. at 124, 101 S.Ct. 426. However, due to a preexisting 9-year sentence, the 10-year sentence would have only added one year to the defendant's time in federal prison. Id. at 125, 101 S.Ct. 426. A federal statute permitted the government to appeal the sentence to the Second Circuit Court of Appeals where the appellate court had the discretion to increase the sentence. Id. at 121 n. 2, 101 S.Ct. 426. The government appealed and sought to increase the sentence. Id. at 125, 101 S.Ct. 426. On appeal, the Second Circuit concluded that the statute violated the prohibition on multiple punishments under the double jeopardy clause. Id. at 126, 101 S.Ct. 426. The Supreme Court reversed. Id. at 143, 101 S.Ct. 426.
¶ 21 The Court determined that sentencing decisions did not enjoy the same level of finality as an acquittal. Id. at 132, 101 S.Ct. 426. The Supreme Court described double jeopardy in general when it stated:
"The constitutional prohibition against `double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. ... The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."
Id. at 127-28, 101 S.Ct. 426 (alteration in original) (quoting Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)). The Court recognized that while *137 these considerations are sensible with regard to retrials on guilt, they "have no significant application to the ... review [of] a sentence." Id. at 136, 101 S.Ct. 426. The appeal at issue did not "approximate the ordeal of a trial on the basic issue of guilt or innocence." Id. Furthermore, the Court concluded that because federal law provided for appeal to the circuit court, and people are deemed to know the law, the defendant had no legitimate expectation of finality in his sentence. Id. "The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." Id. at 137, 101 S.Ct. 426. The Court remanded the case for further determination. Id. at 143, 101 S.Ct. 426.
¶ 22 In later cases, the Court has clarified what double jeopardy requires with regard to multiple punishments. The Court has recognized that "in the multiple punishments context" the interest the double jeopardy clause seeks to protect is "`limited to ensuring that the total punishment did not exceed that authorized by the legislature.'" Thomas, 491 U.S. at 381, 109 S.Ct. 2522 (quoting United States v. Halper, 490 U.S. 435, 450, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), abrogated on other grounds by Hudson v. United States, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)). However, even if the sentence is within the range authorized by the legislature, double jeopardy may still pose a bar if the defendant has a legitimate expectation of finality in his or her sentence. See Pennsylvania v. Goldhammer, 474 U.S. 28, 30-31, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985); accord State v. Hardesty, 129 Wash.2d 303, 311, 915 P.2d 1080 (1996).
¶ 23 We recognized the legitimate expectation of finality standard in Hardesty. Hardesty was accused of fraud for failing to accurately relate his criminal history as part of a plea agreement. Hardesty, 129 Wash.2d at 305, 915 P.2d 1080. After Hardesty had fully served his sentence, the prosecutor determined that Hardesty had a more extensive criminal history and moved to increase his sentence. Id. at 307, 915 P.2d 1080. The trial court granted the motion and extended Hardesty's sentence. Id. at 308, 915 P.2d 1080. The Court of Appeals reversed on double jeopardy grounds. Id. at 309, 915 P.2d 1080. On review, we determined that those who commit fraud on the court may be subject to a resentencing because they have no expectation of finality in their sentences. Id. at 315, 915 P.2d 1080. We stated that a legitimate expectation of finality "may be influenced by many factors such as the completion of the sentence, the passage of time, the pendency of an appeal or review of the sentencing determination, or the defendant's misconduct in obtaining the sentence." Id. at 311, 915 P.2d 1080.
¶ 24 Here, Gonzalez was on notice that his sentence could be modified. As explained above, the restitution statute allows for the total amount to be amended. RCW 9.94A.753(4). Because everyone is charged with knowing what the law is, Gonzalez is deemed to know that his restitution order was amendable. While it is conceivable that the passage of time alone could be sufficient to give rise to a legitimate expectation of finality, sufficient time has not passed in this case. At trial, Gonzalez was made aware of the nature and extent of Thoren's injuries. He knew that Thoren's injuries were severe and would take substantial treatment time. Therefore, Gonzalez could not have had a legitimate belief that the restitution order was final at the time the amended restitution order was entered.
¶ 25 Because Gonzalez did not have a legitimate expectation of finality in the restitution portion of his sentence, and because the restitution amount is consistent with RCW 9.94A.753(3), double jeopardy was not violated when the trial court entered the amended order of restitution.

IV. CONCLUSION
¶ 26 When an order of restitution is entered, the amount of restitution may be later modified by the court. RCW 9.94A.753(4). A modification that increases the amount of restitution does not violate double jeopardy unless the offender had a legitimate expectation in the finality of the restitution order. Here, restitution was properly amended under RCW 9.94A.753(4). The amendment did not constitute a violation of double jeopardy *138 because the statute put Gonzalez on notice that restitution could be amended. Also, due to the nature and extent of Thoren's injuries, Gonzalez should have been aware that his restitution could have been modified even two and a half years after sentencing. The amended order of restitution is affirmed.
WE CONCUR: BARBARA A. MADSEN, C.J., SUSAN OWENS, CHARLES W. JOHNSON, GERRY L. ALEXANDER, JAMES M. JOHNSON and DEBRA L. STEPHENS, JJ.
SANDERS, J. (dissenting).
¶ 27 We are asked to determine whether the State violated RCW 9.94A.753[1] when it sought additional restitution from Robert Bustmante Gonzalez two-and-one-half years after the court originally ordered him to pay restitution. Gonzalez was convicted of assault and robbery in the first degree and ordered to pay $21,306.45 in restitution to the crime victims' compensation program (CVCP) as part of his judgment and sentence. The restitution order was amended once by stipulated order but, 907 days after Gonzalez was sentenced, the State sought an additional $25,561.30 in restitution, which the trial court ordered.
¶ 28 Because the second restitution order violated both RCW 9.94A.753 and double jeopardy, I would reverse the trial court.

I. RCW 9.94A.753
¶ 29 We review interpretation of the restitution statute de novo. State v. Edelman, 97 Wash.App. 161, 165, 984 P.2d 421 (1999). A court derives its authority to order restitution from statute. RCW 9.94A.753(1); State v. Davison, 116 Wash.2d 917, 919, 809 P.2d 1374 (1991). Here we must determine whether the State violated RCW 9.94A.753 when it sought the additional $25,561.30 in restitution from Gonzalez.
¶ 30 To interpret a statute we first look to its plain language. State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007). If the plain language is subject to one interpretation only, our inquiry ends because plain language does not require construction. Id.; State v. Thornton, 119 Wash.2d 578, 580, 835 P.2d 216 (1992). If the statute remains subject to multiple interpretations after analyzing the plain language it is ambiguous. Burton v. Lehman, 153 Wash.2d 416, 423, 103 P.3d 1230 (2005). A statute is ambiguous if "susceptible to two or more reasonable interpretations," but "a statute is not ambiguous merely because different interpretations are conceivable." State v. Hahn, 83 Wash.App. 825, 831, 924 P.2d 392 (1996). "If a statute is ambiguous, the rule of lenity requires us to interpret the statute in favor of the defendant absent legislative intent to the contrary." State v. Jacobs, 154 Wash.2d 596, 601, 115 P.3d 281 (2005) (citing In re Post Sentencing Review of Charles, 135 Wash.2d 239, 249, 955 P.2d 798 (1998)).
¶ 31 RCW 9.94A.753(1) requires the court to determine restitution within 180 days of a judgment and sentence, except as provided in subsection (7). RCW 9.94A.753(7) allows the Department of Labor and Industries CVCP to petition the court within one year of judgment *139 and sentence for entry of a restitution order, if the court has not already ordered restitution. Here the court ordered Gonzalez to pay restitution to the CVCP, so the CVCP could not petition under subsection (7) for restitution from Gonzalez.
¶ 32 RCW 9.94A.753(4) allows a restitution order to be modified as to amount while the offender is under the court's jurisdiction; the offender remains under the court's jurisdiction until the obligation is satisfied. The State asserts subsection (4) allows a court to modify the principal amount of restitution owed at any time the offender is under the court's jurisdiction. The State argues the statute is plain and unambiguous, and it was merely modifying the restitution ordered when it sought to more than double Gonzalez's original restitution order after two-and-one-half years.
¶ 33 Gonzalez, on the other hand, argues RCW 9.93A.753(4) is ambiguous, specifically the phrase "restitution may be modified as to amount." He argues the phrase refers only to a change in the scheduled payment amount, not a change in the principal amount. He contends the only change allowed under the statute is a procedural change, not a change in the principal amount owed.
¶ 34 The majority agrees with the State's argument. In doing so the majority strains to construe the statute in a light favorable to the State. Majority at 134-36. This difficulty of labor itself indicates RCW 9.94A.753's inherent ambiguity. The only thing clear about the statute is that it is susceptible to two reasonable interpretations. It is ambiguous whether the principal amount of restitution owed may be modified or whether only the scheduled payment amount may be modified. RCW 9.94A.753 is ambiguous, and the rule of lenity should favor Gonzalez's interpretation of the statute.
¶ 35 The majority's reading of RCW 9.94A.753(4) does not dovetail with the statutory limitations in subsections (1) and (7). It attempts to reach beyond the scope permitted by those subsections. A court must set restitution within 180 days unless good cause is shown under subsection (1), and the CVCP may petition the court within one year of a judgment and sentence for an entry of a restitution order, if the court has not already ordered restitution under subsection (7). Here the court set restitution within 180 days, but then the State sought a new restitution order two-and-one-half years later, arguing it had authority to do so under subsection (4). The State was essentially seeking a new restitution order, not merely modifying or amending the previous order. That violates the statute. The majority today allows for an endless stream of restitution orders under RCW 9.94A.753 with no finality whatsoever. This is not the command of RCW 9.94A.753(1) and (7).

II. Double Jeopardy
¶ 36 As the majority correctly points out, both our state and federal constitutions protect against double jeopardy. Majority at 136. The Fifth Amendment to the United States Constitution requires that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." Our state analog provides: "No person shall be... twice put in jeopardy for the same offense." Const. art. I, § 9. To date our courts have interpreted the provisions identically. State v. Gocken, 127 Wash.2d 95, 107, 896 P.2d 1267 (1995). Here the relevant protection afforded by both provisions is against multiple punishments for the same offense imposed in a single proceeding. See Jones v. Thomas, 491 U.S. 376, 381, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989).
¶ 37 The majority correctly notes, "the interest the double jeopardy clause seeks to protect is `limited to ensuring that the total punishment did not exceed that authorized by the legislature.'" Majority at 137 (internal quotation marks omitted) (quoting Jones, 491 U.S. at 381, 109 S.Ct. 2522). "The purpose is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." Jones, 491 U.S. at 381, 109 S.Ct. 2522. Yet this is exactly what the majority permits. By allowing the State to effectively issue two separate restitution orders, the majority permits a punishment that exceeds the well-defined boundaries of RCW 9.94A.753(1). As explained in section I above, the legislature authorized courts to *140 order restitution within 180 days unless good cause is shown under subsection (1). RCW 9.94A.753(1). In the alternative, the CVCP may petition the court within one year of a judgment and sentence for an entry of a restitution order, if the court has not already ordered restitution under subsection (7). RCW 9.94A.753(7). All other readings of the statute are ambiguous and should be construed in favor of the defendant. Here the second restitution order (i.e., the punishment) exceeds that authorized by the legislature because the additional $25,561.30 does not comply with RCW 9.94A.753(1) or (7). It violates double jeopardy.
¶ 38 We have also recognized double jeopardy prohibits multiple punishments for the same offense when the defendant has a legitimate expectation of finality. State v. Hardesty, 129 Wash.2d 303, 311, 915 P.2d 1080 (1996). "[T]he analytical touchstone for double jeopardy is the defendant's legitimate expectation of finality in the sentence. ..." Id.
¶ 39 The majority relies heavily on United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), for the proposition that a sentencing decision does not "enjoy the same level of finality as an acquittal." Majority at 136. It reads DiFrancesco to hold "because federal law provided for appeal to the circuit court, and people are deemed to know the law, the defendant had no legitimate expectation of finality in his sentence." Id. at 137.[2] But the majority omits an essential element of the case; namely, that the government in DiFrancesco properly sought review. As we recognized in Hardesty:
In DiFrancesco, the Court held the defendant lacked an expectation of finality in the sentence because he was charged with knowledge the racketeering statute provided for review of the sentencing determination, and the government had promptly sought review within the relevant statutory period.

Hardesty, 129 Wash.2d at 312, 915 P.2d 1080 (emphasis added) (citing DiFrancesco, 449 U.S. at 136-39, 101 S.Ct. 426). Here the State did not properly seek review of the restitution order. Instead, it waited 907 dayswell beyond the bounds of RCW 9.94A.753 (1) and (7). Thus DiFrancesco does not support the majority; instead it suggests Gonzalez's expectation of finality was strengthened by the State's failure to properly seek review.
¶ 40 The case law supporting DiFrancesco also fails to support the majority's position. We have recognized a "defendant acquires a legitimate expectation of finality in a sentence, substantially or fully served, unless the defendant was on notice the sentence might be modified, due to either a pending appeal or the defendant's own fraud in obtaining the erroneous sentence." Hardesty, 129 Wash.2d at 312, 915 P.2d 1080. We have looked approvingly on precedent suggesting "a defendant has an expectation of finality in the sentence once she or he begins to serve it, unless a review process is employed or the defendant `intentionally deceive[d] the sentencing authority or thwart[ed] the sentencing process.'" Id. (emphasis added) (alterations in original) (quoting United States v. Jones, 722 F.2d 632, 638 (11th Cir.1983)).
¶ 41 Gonzalez had substantially begun to repay the restitution owed under the first order. He began to serve his punishment. The State did not undertake a timely review process, and Gonzalez did not deceive the sentencing authority. DiFrancesco suggests Gonzalez's expectation of finality after the first restitution order was legitimate. The improper second restitution, which was ordered 907 days after the first, violated double jeopardy.
¶ 42 Because the second restitution order for $25,561.30 violated both Gonzalez's statutory and constitutional rights, I dissent.
WE CONCUR: TOM CHAMBERS, J.
NOTES
[1] RCW 9.94A.753 states:

(1) When restitution is ordered, the court shall determine the amount of restitution due at the sentencing hearing or within one hundred eighty days except as provided in subsection (7) of this section. The court may continue the hearing beyond the one hundred eighty days for good cause. The court shall then set a minimum monthly payment that the offender is required to make towards the restitution that is ordered. The court should take into consideration the total amount of the restitution owed, the offender's present, past, and future ability to pay, as well as any assets that the offender may have.
(2) During the period of supervision, the community corrections officer may examine the offender to determine if there has been a change in circumstances that warrants an amendment of the monthly payment schedule. The community corrections officer may recommend a change to the schedule of payment and shall inform the court of the recommended change and the reasons for the change. The sentencing court may then reset the monthly minimum payments based on the report from the community corrections officer of the change in circumstances.
(3) Except as provided in subsection (6) of this section, restitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering, or other intangible losses, but may include the costs of counseling reasonably related to the offense. The amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime.
(4) ... For an offense committed on or after July 1, 2000, the offender shall remain under the court's jurisdiction until the obligation is completely satisfied, regardless of the statutory maximum for the crime. The portion of the sentence concerning restitution may be modified as to amount, terms, and conditions during any period of time the offender remains under the court's jurisdiction, regardless of the expiration of the offender's term of community supervision and regardless of the statutory maximum sentence for the crime. The court may not reduce the total amount of restitution ordered because the offender may lack the ability to pay the total amount. The offender's compliance with the restitution shall be supervised by the department only during any period which the department is authorized to supervise the offender in the community under RCW 9.94A.728, 9.94A.501, or in which the offender is in confinement in a state correctional institution or a correctional facility pursuant to a transfer agreement with the department, and the department shall supervise the offender's compliance during any such period. The department is responsible for supervision of the offender only during confinement and authorized supervision and not during any subsequent period in which the offender remains under the court's jurisdiction. The county clerk is authorized to collect unpaid restitution at any time the offender remains under the jurisdiction of the court for purposes of his or her legal financial obligations.
. . . .
(7) Regardless of the provisions of subsections (1) through (6) of this section, the court shall order restitution in all cases where the victim is entitled to benefits under the crime victims' compensation act, chapter 7.68 RCW. If the court does not order restitution and the victim of the crime has been determined to be entitled to benefits under the crime victims' compensation act, the department of labor and industries, as administrator of the crime victims' compensation program, may petition the court within one year of entry of the judgment and sentence for entry of a restitution order. Upon receipt of a petition from the department of labor and industries, the court shall hold a restitution hearing and shall enter a restitution order.
[2] Here, the State asserts that restitution is civil in nature and, therefore, does not implicate double jeopardy. While we have not yet determined whether restitution is civil or criminal, we do not reach that issue today. Even if restitution were criminal, the amended order in this case does not violate double jeopardy.
[1] RCW 9.94A.753(1) provides:

When restitution is ordered, the court shall determine the amount of restitution due at the sentencing hearing or within one hundred eighty days except as provided in subsection (7) of this section. The court may continue the hearing beyond the one hundred eighty days for good cause.
RCW 9.94A.753(4) provides:
For an offense committed on or after July 1, 2000, the offender shall remain under the court's jurisdiction until the obligation is completely satisfied, regardless of the statutory maximum for the crime. The portion of the sentence concerning restitution may be modified as to amount, terms, and conditions during any period of time the offender remains under the court's jurisdiction, regardless of the expiration of the offender's term of community supervision and regardless of the statutory maximum sentence for the crime.
RCW 9.94A.753(7) provides:
Regardless of the provisions of subsections (1) through (6) of this section, the court shall order restitution in all cases where the victim is entitled to benefits under the crime victims' compensation act, chapter 7.68 RCW. If the court does not order restitution and the victim of the crime has been determined to be entitled to benefits under the crime victims' compensation act, the department of labor and industries, as administrator of the crime victims' compensation program, may petition the court within one year of entry of the judgment and sentence for entry of a restitution order.
[2] This analysis fails right off the bat because, due to the inherent ambiguity of RCW 9.94A.753(4), there is no way Gonzalez could be "deemed to know the law." Moreover in DiFrancesco the federal law allowing the government to appeal was explicit, straightforward, and unambiguous, in stark contrast to the statute in question here. See DiFrancesco, 449 U.S. at 120 n. 2, 101 S.Ct. 426 (quoting 18 U.S.C. § 3576).