FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JUNE 26, 2025

*Stone, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JUNE 26, 2024

*Sarah Pendleton*

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT IN | ) ) ) ) ) | No. 103121-1 |
| TRAVIS BEARDEN, | ) ) | |
| Plaintiff-Appellant, | ) ) | EN BANC |
| v. | ) ) | |
| CITY OF OCEAN SHORES; DEAN DINGLER, personal representative of Crystal Dingler, | ) ) ) ) | Filed: June 26, 2025 |
| Defendants-Appellees. | ) ) ) | |

MONTOYA-LEWIS, J.[1]—Public employees in Washington State are entitled to paid leave when their military service requires them to be absent from their employment with state or local government. Washington's paid military leave statute provides 21 days of paid military leave for those public employees each military fiscal year from October 1 to the following September 30[2] to report for

---

[1] I would like to thank my law clerk, Evanie Parr, for her invaluable assistance in the research and drafting of this opinion.

[2] The military fiscal year runs from October 1 to September 30. *See* FINAL B. REP. ON H.B. 1028, at 1, 57th Leg., Reg. Sess. (Wash. 2001).

required military duty, training, or drills. RCW 38.40.060(1). The United States Court of Appeals for the Ninth Circuit certified this question to this court: Is an employee entitled to such paid military leave even if they are not "scheduled to work" by the employer due to the length of their absence for military service? We answer the certified question in the affirmative: yes, the plain language of the statute entitles public employees to 21 days of paid military leave for required military service during each military fiscal year.

## FACTS AND PROCEDURAL HISTORY

### A.    Factual Background

Travis Bearden began working as a firefighter and paramedic for the city of Ocean Shores in 2007. He joined the U.S. Army Reserves in 2013; Bearden returned to work for the city in March 2014 after completing military training. During his employment with the city, Bearden took periodic absences for military service and received paid military leave from the city. The present dispute primarily arises from military leave Bearden took between 2019 and 2021.

### 1.    *Bearden's First and Second Leave (October 2019-August 2020)*

In October 2019, Bearden submitted to the city military orders requiring him to report for annual training from October 16 to October 30, 2019 (the first leave). Next, he submitted additional orders to report for "active duty for training" for the

next nine months, from November 5, 2019, to August 27, 2020 (the second leave).

Dkt. 35 (Suppl. Excerpts of R. of Appellees) at 131 (declaration of Dani Smith).

During Bearden's first and second leave, "he was kept on the schedule and provided paid military leave for his scheduled work days. He then used his own accrued leave . . . to remain on the schedule in a paid status until February 13, 2020 when all paid leave was exhausted." *Id.* at 127. In February 2020, the city informed Bearden it had placed him on "leave without pay status." *Id.* at 135.

This manner of applying various types of leave during absence for military service appears to be the city's consistent practice. Bearden similarly received paid military leave for training between summer 2013 and spring 2014. During that time, the city paid Bearden for 21 days of paid military leave for workdays in July through September 2013, which were attributed to the October 2012-September 2013 military fiscal year. Dkt. 35, at 142-43, 154-56 (declaration of Angela Folkers). Then, between October 1 and December 5, 2013, Bearden took an additional 21 days of paid military leave, presumably attributed to the October 2013-September 2014 military fiscal year. *Id.* at 143, 156-58. After that, Bearden exhausted his available accrued leave, and the city placed him on unpaid military leave of absence status until he returned in March 2014. *Id.* at 143, 159.

2.      *Bearden's Third Leave (August 2020-May 2021)*

While away during the second leave, Bearden submitted additional orders to

report for active duty at the end of August 2020 for a period of 273 days, ending in May 2021 (the third leave). When the next military fiscal year began in October 2020 and Bearden was still away serving under the third leave orders, he expected to receive another 21 days of paid military leave. He e-mailed the fire chief to inquire why he had not yet received military leave pay beginning on October 1, 2020. The fire chief passed the message to city administrators, indicating he did not believe the city had to pay military leave at that point because Bearden was "no longer Reserve but on deployment (employee of the military) and City has no longer need to pay for any benefits after we paid his 21 Days reserve." *Id.* at 136 (declaration of Dani Smith). A human resources specialist responded to Bearden, explaining that as of November 5, 2019, he was "on a Military Leave of Absence" and he had "no scheduled work days with the City of Ocean Shores Fire Department." *Id.* at 140. The city believed Bearden had "no paid military leave" at that point because he had no scheduled shifts with the fire department. *Id.*

The city did not provide Bearden any paid military leave for the October 2020-September 2021 military fiscal year during his third leave. It contends, "Bearden has not worked for the City since going on leave in October 2019; and has not had scheduled work shifts since exhausting all leave in February 2020. He is on an extended military furlough until he seeks reemployment with the City." *Id.* at 128.

B.     Procedural History

Bearden filed a complaint against the city in federal court in January 2021, asserting the city violated the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. §§ 4301-4335. Relevant to the certified question, Bearden alleged the city violated 38 U.S.C. § 4316(d) and 20 C.F.R. § 1002.153(a) by denying him accrued leave, including paid military leave under RCW 38.40.060, while he was absent for military service.

The district court granted summary judgment to the defendants. As to the paid military leave statute, the court agreed with the city and concluded Bearden was not entitled to paid military leave during his third leave because he was not "scheduled to work" on any day he was on military leave during the October 2020-September 2021 military fiscal year. Dkt. 23 (Excerpts of R.) at ER-18 (order granting summary judgment) (quoting RCW 38.40.060(4)(a)). Therefore, the court dismissed each of Bearden's USERRA claims based on paid military leave under RCW 38.40.060. *Id.* at ER-21. Bearden appealed, and the United States Court of Appeals for the Ninth Circuit certified a question to this court to interpret Washington's paid military leave statute.

CERTIFIED QUESTION

Is a public employee entitled to paid military leave under RCW 38.40.060 if the employee is not "scheduled to work" by the employer because

the employee is on active duty during an extended military leave of absence?

Ord. Certifying Question to the Wash. Sup. Ct. at 12 (9th Cir. May 29, 2024).[3]

## ANALYSIS

A federal court may ask this court to answer a question of Washington law when a resolution of that question is necessary to resolve a case before the federal court. RCW 2.60.020; *Convoyant, LLC v. DeepThink, LLC*, 200 Wn.2d 72, 73, 514 P.3d 643 (2022). Certified questions are questions of law we review de novo. *Carlsen v. Glob. Client Sols., LLC*, 171 Wn.2d 486, 493, 256 P.3d 321 (2011). We also review the meaning of a statute de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

When first enacted in 1939, Washington's paid military leave statute provided 15 days of paid military leave per year, in addition to any vacation or sick leave, for public employees in the Washington National Guard or certain branches of the U.S. armed forces or reserves to participate in active training duty. LAWS OF 1939, ch. 113, § 1. The current statute applies to every public employee "who is a member of the Washington national guard or of the army, navy, air force, coast guard, or marine corps reserve of the United States, or of any

---

[3] It is not necessary to reformulate the certified question. While we agree the phrase "scheduled to work" is not the only statutory language to guide our analysis, the certified question is not as limited as Bearden suggests. *See* Ord. Certifying Question to the Wash. Sup. Ct. at 12 ("We do not intend the phrasing of our question to restrict the Washington Supreme Court's consideration of this issue.").

organized reserve or armed forces of the United States." RCW 38.40.060(1). Those employees "*shall be entitled to and shall be granted* military leave of absence from such employment" for up to 21 days "during *each year* beginning October 1st and ending the following September 30th in order that the person may report for required military duty, training, or drills." *Id.* (emphasis added). The statute also provides that those employees "shall receive" their "normal pay" during the period of military leave, and that they "shall be charged military leave only for days that [they are] scheduled to work" for the public employer. RCW 38.40.060(3), (4)(a).

Washington courts have rarely had occasion to interpret RCW 38.40.060. The only published decision of a Washington court interpreting the statute is *Washington Federation of State Employees v. State Personnel Board*, 54 Wn. App. 305, 773 P.2d 421 (1989). *Washington Federation* held the statute unambiguously provided "days" of leave time in reference to workdays—days the employee would otherwise work for the public employer—rather than calendar days, such that an employer cannot charge military leave for a day an employee never would have worked, like as a weekend. *Id.* at 309. There, a regulation allowed military paid leave for up to "'15 calendar days in any one calendar year'"; employees argued that rule conflicted with former RCW 38.40.060 (1957) because it calculated military leave by calendar day instead of workday. *Id.* at 307 (emphasis omitted) (quoting WAC 356-18-130). Under the rule, employees were

charged with taking military leave not only for days in which they engaged in military training but also for

> nonworking days that fall between working days on which the employee participates in the training. Accordingly, an employee who engages in military training on a Friday through the following Monday is charged with having taken leave on the intervening Saturday and Sunday (a total of 4 days), even if the employee would not have been required to work at [their] state job on that weekend.

*Id.* The plain language of former RCW 38.40.060 (1957) provided military leave "'*from such employment* for a period not exceeding fifteen days,'" which "evidence[d] a clear intent that military leave is to be computed on a *work day* basis." *Id.* at 309 (quoting former RCW 38.40.060 (1957)). The court reasoned, "[W]ords in a statute take their meaning from the context in which they are used" and, as "days" is used in reference to "employment," the term must be understood "in the context of work days, not calendar days. The statute appears to us to be clear and unambiguous in this regard." *Id.* at 310-11 (citing *State v. Wanrow*, 88 Wn.2d 221, 228, 559 P.2d 548 (1977) (plurality opinion); *Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys.*, 104 Wn.2d 353, 369, 705 P.2d 1195 (1985)).

The legislature later amended RCW 38.40.060, adding a provision that "[t]he officer or employee shall be charged military leave only for days that [they are] scheduled to work for the state or the county, city, or other political subdivision." Former RCW 38.40.060 (LAWS OF 2010, ch. 91, § 1), *recodified as* RCW 38.40.060(4)(a). This amendment is consistent with *Washington Federation*'s

8

holding that military leave is to be charged by the workday, rather than the calendar day. *See* FINAL B. REP. ON SUBSTITUTE H.B. 2403, at 1, 61st Leg., Reg. Sess. (Wash. 2010) (a public employee "is charged military leave only for the days that [they are] regularly scheduled to work for the state or local government").

We begin with the plain language of a statute to ascertain its meaning. When interpreting statutes, "[t]he court's fundamental objective is to ascertain and carry out the Legislature's intent." *Campbell & Gwinn*, 146 Wn.2d at 9. "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Id.* at 9-10. The plain meaning is derived from what the legislature has said in the statute and related statutes. *Id.* at 11. "[I]f, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids of construction, including legislative history." *Id.* at 12 (citing *Cockle v. Dep't of Lab. & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001); *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994)).

We read statutes as a whole and "should not interpret statutes in a way that would render any language 'meaningless or superfluous.'" *Wash. State Ass'n of Counties v. State*, 199 Wn.2d 1, 12-13, 502 P.3d 825 (2022) (internal quotation marks omitted) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). "The meaning of a particular word in a statute 'is not gleaned

from that word alone, because our purpose is to ascertain legislative intent of the statute as a whole.'" *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996) (quoting *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994)). Courts should "avoid a literal reading if it would result in unlikely, absurd or strained consequences" because the statute's purpose "should prevail over express but inept wording." *Id.* (citing *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992); *State ex rel. Royal v. Bd. of Yakima County Comm'rs*, 123 Wn.2d 451, 462, 869 P.2d 56 (1994)).

The paid military leave statute is unambiguous; it entitles a public employee to paid military leave for each military fiscal year. In light of the statute's plain language—regarding types of service members, periods of leave, and the verbs employed in different subsections—and its overall purpose, we must answer the certified question in the affirmative.

First, the plain language of the statute broadly provides this paid leave to all service members who work for state or local government, regardless of which branch of the military they serve in or their status with the armed forces. RCW 38.40.060(1) provides paid military leave for "[e]very officer and employee of the state [or local government] who is a member of the Washington national guard or of the army, navy, air force, coast guard, or marine corps reserve of the United States, or of any organized reserve or armed forces of the United States." Paid military leave is

10

available for those employees "in order that the person may report for required military duty, training, or drills." *Id.* The city appears to distinguish absences for service in the Army reserves from active duty deployment, believing it did not owe Bearden paid military leave for the latter. Dkt. 35, at 136 (declaration of Dani Smith) ("He is no longer Reserve but on deployment (employee of the military) and City has no longer need to pay for any benefits after we paid his 21 Days reserve."). The plain text of the statute contradicts the city's position that employees are entitled to paid military leave only while in the reserves, and not while on active duty. The statute expressly and unambiguously applies to public employees who are members "of any organized reserve or armed forces" of Washington or the U.S. and for the time they must "report for required military duty, training, or drills." RCW 38.40.060(1). As long as the service member remains a public employee, they are entitled to 21 days of paid military leave for absences to report for military duty, regardless of whether they are in the reserves, actively deployed, in training, or assigned to drills.

Second, the plain language of the statute expressly provides paid military leave each military fiscal year. Public employees "shall be entitled to and shall be granted military leave of absence from such employment for a period not exceeding twenty-one days *during each year* beginning October 1st and ending the following September 30th." RCW 38.40.060(1) (emphasis added). The statute does not include

11

any temporal limitation on entitlement to paid military leave. The conditions of entitlement are (a) employment with state or local government, (b) membership in any organized reserve or armed forces, and (c) required military duty, training, or drills. *Id.* For each military fiscal year that those conditions are present, employees are entitled to 21 days of paid military leave. *Id.*

The city emphasizes the length of Bearden's absence, which it describes as "a voluntary career choice" to "abandon his public employment to pursue a military career." Answering Br. of Appellees at 8, 28 (boldface omitted). But neither the nature nor the duration of military absence controls this question. The city does not identify any facts in the record bearing on the voluntariness or involuntariness of Bearden's absence for military service—or any authority indicating how that should affect his entitlement to paid military leave under RCW 38.40.060. *But see* Dkt. 35, at 129-34 (declaration of Dani Smith) (attaching military orders *requiring* Bearden to report for training or duty). Moreover, under USERRA, a person who is absent from a position of employment by reason of service in the uniformed services is "deemed to be on furlough or leave of absence while performing such service." 38 U.S.C. § 4316(b)(1)(A). Entitlement to benefits while on such leave of absence "is not dependent on how the employer characterizes the employee's status during a period of service." 20 C.F.R. § 1002.149. Though Bearden was also employed by the Army, the record indicates he continued to be an employee of the city while on

leave of absence for military service. The city's argument about the duration of Bearden's military service is similarly unavailing. The plain language of RCW 38.40.060 places no temporal limit on eligibility for paid military leave but, rather, provides that public employees are eligible for paid military leave "each year." RCW 38.40.060(1).[4]

Third, different terms in the statute must have distinct meanings. The city argues Bearden is not "entitled" to paid military leave under subsection .060(1) unless he is "scheduled to work" under subsection .060(4)(a) because public employees are to be "charged military leave only for days that [they are] scheduled to work." RCW 38.40.060(1), (4)(a). But those are different verbs employed by the legislature in different subsections of the statute and for different purposes. The city would have us conflate those words in such a way that the provision to charge employees only for days they are scheduled to work under subsection .060(4)(a) would supplant the conditions to entitlement in subsection .060(1). As that is neither what the legislature wrote nor what it intended, we cannot construe the statute to produce such an absurd result.

Our canons of statutory interpretation require us to "begin with the assumption

---

[4] To the extent the city worries a person might go on active military duty for year after year, even decades, only to return to their public employer and claim all the benefits they might have accrued in the intervening years, that hypothetical is not presented by the facts or certified question in this case. Even so, USERRA generally limits reemployment rights to a maximum of five years' cumulative absence, so it appears there are legal guardrails in place to account for such a hypothetical scenario. 38 U.S.C. § 4312(a)(2); *see also* RCW 73.16.035(1)(e) (four years).

13

that the legislature means exactly what it says." *DeSean v. Sanger*, 2 Wn.3d 329, 335, 536 P.3d 191 (2023) (citing *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003)); *see also, e.g.*, *Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997). "[T]he legislature is deemed to intend a different meaning when it uses different terms." *State v. Roggenkamp*, 153 Wn.2d 614, 625, 106 P.3d 196 (2005) (citing *State v. Beaver*, 148 Wn.2d 338, 343, 60 P.3d 586 (2002); *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 160, 3 P.3d 741 (2000)); *see also, e.g.*, *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.3d 885 (2007); *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 353, 340 P.3d 849 (2015) ("Different statutory language should not be read to mean the same thing."). Entitlement to paid military leave under subsection .060(1) cannot be governed by the days the employee is scheduled to work under subsection .060(4)(a) because the verbs "entitled" and "charged" must have different meanings within those subsections of the statute.

Subsection .060(1) provides that service members "shall be *entitled* to and shall be *granted* military leave of absence" for up to 21 days to report for military duty. RCW 38.40.060 (emphasis added). In contrast, subsection .060(3) relates to the *amount of pay* and provides that employees "shall *receive*" their "normal pay." *Id*. (emphasis added). Further, subsection .060(4)(a) relates to *which days that leave applies to* and provides that employees "shall be *charged* military leave only for

14

days that [they are] scheduled to work." *Id*. (emphasis added). As the legislature used four different verbs within this statute, it must have intended that the words "entitled," "granted," "receive," and "charged" have different meanings in those distinct contexts. *See Roggenkamp*, 153 Wn.2d at 625; *Densley*, 162 Wn.2d at 219.

Context and ordinary meaning guide our understanding of undefined terms in a statute. *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010); *Whatcom County*, 128 Wn.2d at 546. We may use a dictionary to ascertain a word's plain and ordinary meaning of an undefined statutory term. *Am. Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991) (citing *State ex rel. Graham v. Northshore Sch. Dist. No. 417*, 99 Wn.2d 232, 244, 662 P.2d 38 (1983)); *Gonzalez*, 168 Wn.2d at 263. As to the verbs in subsection .060(1), to "entitle" means "to give a right or legal title to **:** qualify (one) for something **:** furnish with proper grounds for seeking or claiming something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 758 (2002). To "grant" means "to permit as a right, privilege, indulgence, or favor" or to "give, bestow, confer." *Id*. at 989 (small caps omitted). Understood using these ordinary meanings, the terms "entitled" and "granted" indicate that public employees qualify for this type of paid leave, which must be conferred and cannot be denied. The question certified to this court asks when is "a public employee *entitled* to paid military leave" under RCW 38.40.060. Ord. Certifying Question to Wash. Sup. Ct. at 12 (emphasis added).

15

The conditions for entitlement to this leave are made plain by the text of subsection .060(1): the public employee must be a member of the military or reserve who is absent due to required military service. Scheduling is mentioned nowhere in the subsection describing the conditions of entitlement to paid military leave.

The term "charged" in subsection .060(4)(a) must have a different meaning from "entitled" or "granted" in subsection .060(1) or the normal pay the employee "shall receive" under subsection .060(3). RCW 38.40.060; *see Roggenkamp*, 153 Wn.2d at 625. To "charge" may have many meanings, including "to impose or record as a pecuniary obligation," "to record (an item) as an expense, debt, obligation, or liability," or "to enter on the debit side of an account." WEBSTER'S, *supra*, at 377. The statute sets forth that public employees are entitled to and shall be granted paid military leave, and they shall be charged that leave only for days they are scheduled to work for their public employer. In context, the ordinary meaning of "charged" is to charge an item to an account or to record an employer expense. In other words, employees have a finite number of 21 days of paid military leave available per military fiscal year; each day of paid military leave an employee takes must be charged against the balance of available paid military leave days. The statute's requirement that an employee shall be charged only for days they are scheduled to work means employers should record the expense of each of those days as applied only to days the employees would otherwise work.

16

RCW 38.40.060(4)(a); *see Wash. Fed'n*, 54 Wn. App. at 309.

The city contends it could not provide paid military leave for the October 2020-September 2021 military fiscal year during Bearden's third leave because "he had no scheduled workdays to which the City could charge his paid military leave." Answering Br. of Appellees at 27. On the other hand, Bearden argues "scheduled to work" under subsection .060(4)(a) refers to "days the employee would normally work," so an employer should charge paid military leave days against the employee's regularly scheduled workdays, as opposed to days they would never have worked. Appellant's Br. at 33; *see Wash. Fed'n*, 54 Wn. App. at 307-09.

While we cannot add words or clauses to an unambiguous statute, we must "avoid a literal reading if it would result in unlikely, absurd or strained consequences" that would frustrate the statute's purpose. *Whatcom County*, 128 Wn.2d at 546. The city's interpretation would produce absurd results that cannot be what the legislature intended. The city would have us read subsection .060(4)(a) to limit entitlement to paid military leave to days the employee is literally on the employer's schedule. But that reading would conflate the meaning of "charged" and "entitled" and produce an absurd result: even though employees "shall be entitled to and shall be granted" the leave, their ability to access it when they are absent for military service would be subject to the employer's scheduling whims.

17

RCW 38.40.060(1). *Contra Whatcom County*, 128 Wn.2d at 546.

The text of the statute is to be read in context, not in isolation. *Whatcom County*, 128 Wn.2d at 546; *Gonzalez*, 168 Wn.2d at 263; *PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue*, 196 Wn.2d 1, 7-8, 468 P.3d 1056 (2020). In *Washington Federation*, the court held that former RCW 38.40.060 (1957), which provided a "'leave for absence *from such employment* for a period not exceeding fifteen days,'" referred to a total number of workdays, rather than calendar days. 54 Wn. App. at 307 (some emphasis omitted) (quoting former RCW 38.40.060 (1957)), 309. The court did not add the term "workdays" to the statute but, rather, read the term "days" in the context it was used in reference to absence from employment, so the legislature must have intended "that military leave is to be computed on a *work day* basis." *Id.* at 309. Similarly, the phrase "days that [they are] scheduled to work" is used in RCW 38.40.060(4)(a) in reference to when the employee "shall be *charged* military leave." (Emphasis added.) Thus, the work schedule referenced in subsection .060(4)(a) relates to the way in which *the employer must account for the expense* of the paid military leave—not *the employee's entitlement* to the leave under subsection .060(1).

To apply the "scheduled to work" language of subsection .060(4)(a) to limit entitlement to paid military leave under subsection .060(1) would also prove unworkable in the context of hourly shift workers. The paid military leave statute

18

applies to all public employees who miss work for military service, regardless of whether they regularly work the same days or a variable schedule, or on a salaried or hourly basis. For shift workers, schedules may vary and they may not regularly work the same days of the week. If, once the upcoming schedule is created, a shift worker informs their employer they will have to miss a scheduled shift due to military service, a rational employer might find another employee to cover that shift and update the schedule accordingly. In that scenario, the service member employee would be removed from the schedule and, under the city's interpretation, could not be charged paid military leave for the shift they missed due to military service. If this were the correct interpretation of the statute, employers could avoid the military pay requirement entirely.

By the city's reading of the statute, employers would not have to pay paid military leave *at all* because once they know an employee will be absent, they would not place them on the schedule. That cannot be what the legislature intended when it provided that service members are entitled to and granted military leave that must be charged to days they are scheduled to work. No rational employer would schedule an employee to work when they know that employee would not be present and, therefore, no employee could ever claim the paid military leave to which they are entitled under RCW 38.40.060. The city's position would also have the absurd consequence of incentivizing employees to delay until the last minute notifying their

employers when they need to miss work for military service, when it is too late to change the schedule, because otherwise the employer could avoid paying for the leave altogether. *Contra Whatcom County*, 128 Wn.2d at 546. Such an incentive system would benefit neither employees nor employers.

More likely, the legislature intended for the provision limiting when employees can be "charged military leave only for days that [they are] scheduled to work" to address the *Washington Federation* problem. RCW 38.40.060(4)(a); *see* LAWS OF 2010, ch. 91, § 1 (adding the quoted language to the statute for the first time). In that case, the employer charged employees who regularly worked Monday through Friday for paid military leave days on Saturday and Sunday—days they never would have been required to work. *Wash. Fed'n*, 54 Wn. App. at 307. In doing so, the employer caused employees to deplete their limited number of paid military leave days faster by charging it to days they were not actually absent from work. The opposite scenario appears to have arisen here: Bearden was certainly going to be absent from some workdays during the October 2020-September 2021 military fiscal year.[5] In providing that employees "shall be charged military leave only for

---

[5] The city contends it is not possible to pay for military leave during an extended military service absence until the employee returns, is placed back on a schedule, and then misses a scheduled workday. That is not what the text of the statute states. Nor is it how the city applied the statute during Bearden's prior extended military absence when Bearden was absent from July 2013 to March 2014. The city provided 21 days of paid military leave for days up to September 30, 2013, attributed to the October 2012-September 2013 military fiscal year, then provided *an additional* 21 days of paid military leave for days after October 1, which must have been attributed to the next military fiscal year. The city apparently knows how to account for that paid time for payroll

days that [they are] scheduled to work," the legislature must have intended for this leave to be applied to days when the employee would have been expected to work, if not for their military service, rather than days when their absence would have no effect. A particular work schedule under subsection .060(4)(a) does not dictate eligibility for that annual leave under subsection .060(1).

Fourth, the statute must be interpreted consistent with its overall purpose, which is to provide a benefit to military service members in public employment. This court's ultimate task in interpreting statutes is to ascertain and carry out the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 9. Looking to the purpose of the statute as a whole apparent in its plain language, RCW 38.040.060 broadly provides paid leave for public employees who serve in the military. This leave is provided to any public officer and employee, serving in any branch of the military, in active or reserve status, and for military absences for a variety of types of service. RCW 38.40.060(1). This paid leave is "in addition to any vacation or sick leave to which the officer or employee might otherwise be entitled, and shall not involve any loss of efficiency rating, privileges, or pay." RCW 38.40.060(2). The purpose of the statute is to provide a benefit for public employees for their military service.

---

purposes when an employee's military service requires them to be absent for an extended period of time that lasts into another military fiscal year: it did so in fall 2013. Moreover, the method by which an employer accounts for paid military leave in its payroll is entirely aside from the question certified to this court regarding employees' *statutory entitlement* to that paid leave.

In light of the statute's plain language and purpose, we answer the certified question in the affirmative: yes, a public employee is entitled to paid military leave under RCW 38.40.060 even if they are "not 'scheduled to work' by the employer because the employee is on active duty during an extended military leave of absence." Ord. Certifying Question to Wash. Sup. Ct., at 12. RCW 38.40.060(1) entitles all public employees who serve in the military to 21 days of paid military leave during each military fiscal year, without distinguishing between reserve or active duty status and without any limitation on the duration of the military service. The days on which the employee is scheduled to work under subsection .060(4)(a) determine the days on which the employer must charge those 21 days, but the schedule does not limit the employee's annual entitlement to paid military leave under subsection .060(1).

Last, Bearden requests an award of attorney fees and expenses should he prevail on the certified question. RAP 18.1(a) (permitting such an award "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review" before this court). USERRA permits an employee to recover reasonable attorney fees and expenses if they prevail in an action or proceeding to enforce their rights under that federal statute. 38 U.S.C. § 4323(h)(2). Attorney fees may be awarded in the context of a certified question, but only if the requesting party prevails. *E.g.*, *Nelson v. P.S.C., Inc.*, 2 Wn.3d 227, 243-44, 535 P.3d 418 (2023).

Bearden is not entitled to attorney fees because he has not yet prevailed on the merits of his claims. While we answer the question of law certified to this court in the affirmative, it is for the federal courts to determine other issues, such as whether the city's denial of that leave establishes a cause of action under the federal law of USERRA. Those additional issues exceed the scope of the question certified to this court, which inquires only as to a public employee's entitlement to paid military leave under a Washington statute. The federal courts are equipped to resolve the remaining questions in Bearden's appeal there, including the availability and amount of attorney fees for the certified question proceeding, should he ultimately prevail on the merits of his federal claims. *See, e.g.*, *Silver v. Rudeen Mgmt. Co.*, 197 Wn.2d 535, 551, 484 P.3d 1251 (2021) (remanding to the trial court to determine the issue of attorney fees when a party will be entitled to attorney fees for a successful appeal *if they ultimately prevail in the trial court*).

## CONCLUSION

RCW 38.40.060 entitles all public employees who serve in the military to 21 days of paid military leave during each military fiscal year, without distinguishing between reserve or active duty service and without any limitation on the duration to the military service. While subsection .060(4)(a) limits the days on which employers can charge those 21 days of military leave to days the employee is scheduled to work, that subsection does not determine the employee's entitlement to

paid military leave under subsection .060(1). This court's answer to the certified question is a question of law; no party has prevailed on the merits in this proceeding and no party is entitled to attorney fees.

Montoya-Lewis, J.

WE CONCUR:

Stephens, C.J.

Gordon McCloud, J.

Johnson, J.

Yu, J.

Madsen, J.

Whitener, J.

González, J.

Mungia, J.

24